# Coles & Wife v. Allen, Preer & Illges.

*Bill in Equity by Mortgagees, for Confirmation of Purchase at
Sale under Mortgage, and Removal of Cloud on Title.*

1. *Conclusiveness of judgment or decree; on whom binding.*—An alienee,
grantee, or assignee is not bound or affected by any judgment or decree ren-
dered against the alienor, grantor, or assignor, in a suit commenced after the
alienation, grant, or assignment.

2. *Resulting trust; when arises from application of trust funds in payment of
purchase-money.*—The principle is well settled, that if a trustee uses the trust
funds in his hands in making a purchase of lands, taking a conveyance of the
legal title in his own name, a trust results by operation of law, in favor of the
*cestui que trust*, to the extent of the funds thus used; but the trust only results
from the original transaction, and the application of the trust funds to the
payment of the purchase-money must be coeval with the conveyance: a sub-
sequent use of the trust funds, in payment of the trustee's notes for the pur-
chase-money, is not sufficient to create such a trust.

3. *Same; as between guardian and ward.*—When a person borrows money
from an infant's guardian, to be used in paying his notes for lands which he
has purchased, with the understanding and agreement between them that, on
the guardian's resignation in a short time, the borrower would take out letters
of guardianship, and receive his own notes from the former guardian as
money; and this agreement is carried into effect, and the money is so used;
the transaction does not create an equity in the ward to charge the lands with
the payment of the money so borrowed and used.

4. *Who is purchaser pendente lite.*—When lands are sold under a power in a
mortgage, pending a suit against the mortgagor to enforce a charge on them
in favor of a third person, and the mortgagee himself becomes the purchaser,
his title is derived from the mortgage, and the doctrine of *lis pendens* does not
apply to him, if his mortgage was executed before the commencement of the
suit.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 31st December, 1872,
by the persons composing the firm of Allen, Preer & Illges, a
mercantile partnership doing business in Columbus, Georgia,
against George D. Connor, Mrs. Eugenia Coles and her hus-

band, and others; and sought to obtain the confirmation of a sale of certain lands, under a power contained in a mortgage executed to the complainants by said Connor, at which they indirectly became the purchasers, and to perpetually enjoin proceedings under a decree which Mrs. Coles had obtained against said Connor and others, declaring a trust in the lands, or a charge on them in her favor, for her moneys used by Connor in paying for them. The complainants' mortgage, which was made an exhibit to the bill, was dated the 19th January, 1871; recited, as its consideration, that the mortgagor had executed his draft for $3,825.32 to said Allen, Preer & Illges, due the 15th November, 1871, the payment of which he desired to secure, " as well as for the consideration of supplies advanced to me by them, amounting in value to amount of said draft, the receipt whereof is hereby acknowledged;" conveyed a tract of land in said county, together with "twenty-five bales of cotton, and other produce, made, grown, or produced by me," said Connor, "for me, or under my management and control, at any time during the year;" and authorized the mortgagees, if default should be made in the payment of said draft, "to take possession of all or any part of said property," and to sell the same after ten days' notice. Default having been made in the payment of the debt, the mortgagees advertised and sold the lands, under the power of sale contained in the mortgage, on the 21st October, 1872; James B. Mitchell becoming the purchaser at the sale, receiving a conveyance from them, and afterwards (on the same day) conveying the lands to them by quit-claim deed. The bill of Mrs. Coles against said Connor and others, the sureties on his official bond as her guardian, was filed on the 6th March, 1872; and sought to compel a settlement and account of his guardianship, a discovery as to the uses to which her moneys had been applied by him, and to fasten a trust or charge on the lands conveyed by the mortgage to the complainants, on the ground that her said guardian had used her moneys in paying for the lands, and he and his sureties were insolvent. The proceedings had in that suit, a copy of which was made an exhibit to the bill in this case, show that a decree *pro confesso* was regularly entered against said Connor; that an account was stated by the register, under a decretal order of the chancellor, by which it was ascertained that the balance due the ward, after deducting the credits to which the guardian was entitled from the amount of assets which he had received, was $14,693.03, and that the several sums of her money by him invested in said lands, with interest thereon, was $24,253.73; that the register's report was confirmed without objection;

and that the chancellor rendered a final decree in the cause on the 20th November, 1872, declaring that "the complainant has a lien on the lands mentioned in the bill, *for the purchase-money now due*, including principal and interest, which is the sum of $24,253.73," and ordering a sale of the lands by the register unless this sum was paid to him within five days after the adjournment of the court.

As to the consideration of the complainants' mortgage, their bill contained the following allegations: "Your orators advanced to George D. Connor, in the year 1870, money and provisions to enable him to make his crop on his plantation in Barbour and Russell counties for the year 1870. Said advances were made on the express contract and agreement, and the sole consideration, that the said Connor would execute a mortgage, for the payment of said sum of money and supplies, on the property described in said mortgage marked 'Exhibit A;' and on a settlement of accounts for said advances, the sum of $3,825.32 was found to be due for said advances; and at the same time, and on the same day, said Connor executed his draft to your orators for said sum, and, in accordance with his said contract and agreement, he executed said mortgage; and your orators aver that, but for said contract to make said mortgage, they never would have advanced said money and supplies." The lands conveyed by the mortgage were bought by said Connor from William Freeman; whose deed, in which his wife joined, and which was made an exhibit to the bill in this case, was dated the 14th December, 1857, and recited, as its consideration, the payment in hand of $17,850. In reference to Connor's purchase of this land, the claim asserted against the land by Mrs. Coles, and the grounds on which the complainants contested her claim, and asked protection against the decree in her favor, the bill contained the following allegations: "Your orators aver, on information and belief, that a large portion of the purchase-money for said lands was paid with funds of said Connor, and that the amount of the funds of the said Eugenia [Mrs. Coles] invested in said lands was less than $5,000. To state the above facts in another form—the purchase-money for the whole amount of lands purchased by said Connor was $17,850; the payments were provided for by two promissory notes, for $8,925 each; the first note was paid with the funds of said Connor, and in like manner $4,000 was paid on the second note, three months before said Connor was appointed guardian of said Eugenia, and therefore could not have been paid with her funds in his hands as guardian. Your orators aver, that they had no notice of any incumbrance, or claim, or pretended claim of any one what-

ever, in or to the said land, at the time of said contract; and that at the time of the execution of said mortgage by said Connor to them, they had no notice of any claim, or pretended claim, of the said Eugenia Coles to said lands, or that she claimed, or pretended to claim, any interest therein. And your orators call attention to the fact, patent on the bill of said Coles and wife, that your orators were not parties thereto, and that their rights can not be prejudiced by any decree therein rendered."

Mrs. Coles and her husband filed an answer to the bill, and decrees *pro confesso* were entered against the other defendants. Said respondents admitted, in their answer, that the complainants sold goods, wares and merchandise to said Connor, during the year 1870, but to what amount they did not know; denied that the price of said goods was equal to the sum specified in the draft and mortgage, and alleged that the debt had been paid; denied that said goods were sold under a promise or contract that a mortgage should afterwards be given as security for the debt, and alleged that such promise or contract, if made, being verbal only, was void under the statute of frauds; denied the sufficiency of the allegations of the bill as to the complainants' want of notice of the lien or equity of Mrs. Coles, and alleged, on information and belief, that they had notice of it. As to the decree in favor of Mrs. Coles against Connor and his sureties, and the investment of her moneys by him in the lands, they alleged the facts to be as ascertained and established by that decree; insisted that the complainants were not necessary parties to that suit, and that they acquired no title, as against Mrs. Coles, by the sale and purchase under their own mortgage, because it was made while her suit was pending; also, that the sale under the mortgage was a foreclosure of it, and the complainants could not afterwards claim anything as mortgagees; and that they could not claim under their purchase from Mitchell, because he was their attorney and agent, and made the purchase for them. They demurred to the bill, for want of equity; and "because plaintiffs have no right to sue as mortgagees, since, on their own showing, their debt has been paid, and they have no interest as creditors;" and "because they have elected their remedy under the mortgage by sale, and are now estopped from foreclosing by bill;" and because, "as purchasers, their bill shows that they purchased after the decree of May, 1872, declaring that Coles and wife had a right to the relief asked by their bill;" and "because the contract alleged in the bill is shown to be contrary to the statute of frauds;" and "because said mortgage is shown to have been given to secure

an antecedent debt;" and "because plaintiffs omit to show in their bill their want of notice of the pendency of the suit of Coles and wife, and any sufficient excuse for not filing any bill they might wish to file, before the decree rendered in that case."

Connor, whose deposition was taken by the complainants, thus testified as to the consideration of their mortgage : "Allen, Preer & Illges advanced money and provisions to me, in order to enable me to make a crop during the year 1870. The advances were made on the express contract, that twenty-five bales of cotton of my crop, and my land, should be mortgaged to secure the payment for said advances, the land being made mainly the basis of the agreement upon which the advances were made. The above contract was made before any thing was advanced, and they refused to make any advances without the agreement that said mortgage was to be given. The said advances amounted, in all, to about $6,000. At the time said contract was made, I did not disclose that any one had any lien on the land or crop. I executed the mortgage in fulfillment of said contract, and made no disclosures as to lien, except as to W. H. Younge's mortgage for about $3,800, as therein recited; and I told them there was no other incumbrance on said lands."

As to his purchase of the lands, and the use of the money belonging to Mrs. Coles in paying for them, Connor testified as follows : "Deponent was appointed guardian of Eugenia Coles on the 13th June, 1859. Purchased said lands from William Freeman, in November, or December, 1857. The terms of the purchase were, one half, being $8,925, was to be paid on the 1st day of January, 1858, and the other half on the 1st day of January, 1859. Gave $17,850 for said lands, and was to pay one half on the 1st January, 1858, which was considered cash, and the other half on credit, to be paid in twelve months, and without interest. Gave a note for the credit payment, which was due the 1st January, 1859. On the first note, due January 1st, 1858, his best recollection is that $2,512 was paid about the middle of January, 1858, and thinks the balance was paid during the year 1858. The other note, due the 1st January, 1859, was paid about the 21st March, 1859, except about $186.69, which was paid a short time afterwards." "While Leroy Upshaw was the guardian of said Eugenia Coles, deponent borrowed from him, as such guardian, on the 12th March, 1859, the sum of $4,500; and when he testified before the register, as copied in the direct interrogatories, that he had invested the money of said Eugenia in said lands, he alluded to the money which he had thus borrowed. Said Upshaw was the guardian of

said Eugenia when deponent purchased said land. It was about one year and eight months from the time deponent purchased said lands to the time he was appointed guardian of said Eugenia. Before deponent became her guardian, he had paid the whole amount due for said land, with the exception of some $186. In March, 1859, deponent received from said Upshaw $4,500 of money belonging to said Eugenia, and in addition, between then and June 13, 1859, when he was appointed her guardian, a sum of money making, with that sum, the amount of $7,200 and odd in all. The understanding was, that he should pay this money on the Freeman lands. There was no conversation between deponent and said Upshaw to that effect; but it was so understood, and the money went that way. When this money was received, it was the understanding that deponent should be appointed guardian of said Eugenia. When deponent became her guardian, he received his notes from said Upshaw for the money so borrowed, on deponent's settlement with said Upshaw."

In reference to the loan of the money to Connor, Upshaw, the former guardian, thus testified: " Seven thousand two hundred dollars in cash, of the moneys belonging to said Eugenia, was received by said Connor before he got the guardianship. All, or nearly all of the money, was used by said Connor in the purchase of the Freeman place, which was bought in 1858. It was received in March, and Connor did not get the guardianship until June, 1859. Deponent let him have the cash in March, 1859, before he was her guardian. Connor was to become her guardian, as deponent knew; and he would not have let him have the money, except upon the understanding that he was to become her guardian. Connor said he would take the money, and that would be a settlement when he and deponent should have a settlement. Deponent would not have let him have the money, but for the fact that Connor was to become the guardian. Connor afterwards became guardian, and he and deponent settled it in that way. Connor's notes were used in the settlement, and there was no actual cash in the settlement; that is, very little, if any. The cash had been previously paid over to Connor."

On final hearing, on pleadings and proof, the chancellor held that the complainants were entitled to relief; and he therefore rendered a decree, confirming their title under the mortgage, and perpetually enjoining proceedings under the decree in favor of Mrs. Coles. From this decree Coles and wife appeal, and here assign it as error.

[Coles and Wife v. Allen, Preer & Illges.]

HOOPERS & WADDELL, and WATTS & SONS, for appellants.
1. The complainants must make out their own case, and can
not have relief on account of any weakness in the lien or
equity asserted by Mrs. Coles. Whether tested by the alle-
gations of the bill, or by the proof, their claim must fail.
They can not have relief as mortgagees, because their sale
under the mortgage was a foreclosure, and the mortgage debt
was thereby extinguished.—*Williams v. Hatch*, 38 Ala. 338 ;
*Cheek v. Waldrum*, 25 Ala. 152 ; *Foster v. Goree*, 5 Ala. 424 ;
*Edmondson v. Welsh*, 27 Ala. 578 ; *Benham v. Rowe*, 2 Cal.
They can not have relief as purchasers, because their pur-
chase was champertous, and was made *pendente lite ;* and
although they were not parties to the suit of Mrs. Coles,
Connor was a party, under whom they claim, and from whom
they received the possession.—Sugden on Vendors, 1047 ;
*Finch v. Newnham*, 2 Vernon, 216 ; *Trevelyan v. White*, 1 Bea-
van, 588 ; *Murray v. Ballou*, 1 John. Ch. 573 ; *Murray v. Lil-
burn*, 2 John. Ch. 444 ; *Newman v. Chapman*, 2 Rand. 93 ;
4 Kent's Com. 449, note.

2. The investment of the funds of Mrs. Coles by her guar-
dian, in payment for the land, is shown by the allegations of
the bill and its exhibits, which are to be construed most
strongly against the complainants ; and the only matter of
dispute, on the face of the bill, is as to the amount so invest-
ed.—*Minter & Gayle v. Bank*, 23 Ala. 762 ; 4 Jones, Eq. 27.
The allegation of the bill is, "That the amount of funds of
Mrs. Coles invested in said land was less than $5,000," which
is an admission that the sum so invested was $4,999 ; while
the proof shows that the sum actually invested was $7,200,
which, with interest, exceeds the value of the land. But the
fact of the investment being admitted, the amount is imma-
terial in this case ; and it is equally immaterial that a part
of the money was so used before Connor became the guar-
dian. The proof shows that it was borrowed for the de-
clared purpose of being invested in the land, and with the
understanding that it should be so used ; and Upshaw swears
that, but for this agreement, he would not have let Connor
have the money. This, in law, only shows collusion between
Connor and the former guardian, and neither Connor him-
self, nor any one claiming under him, can derive any ad-
vantage from it. This use of the trust funds gave Mrs. Coles
an equity to charge the lands.—*Moseley v. Lane*, 27 Ala. 70 ;
*Preston & Stetson v. McMillan*, 58 Ala. 84.

3. This equity of Mrs. Coles being older and superior to
the complainants' lien or claim on the land, they claim pro-
tection against it as *bona fide* purchasers without notice.
But the allegations of their bill, which are peculiar, and to

[Coles and Wife v. Allen, Preer & Illges.]

which particular attention is invited, are not sufficient to entitle them to such protection.—*Ledbetter v. Walker*, 31 Ala. 176; 29 Ala. 703. The consideration of the mortgage is averred to be an antecedent debt, which is alleged to have been contracted on the faith of Connor's promise to execute the mortgage; but the averments as to the terms, time, &c., of this promise, are singularly indefinite and uncertain, and the promise was void under the statute of frauds. No reason is assigned for postponing the execution of the mortgage an entire year; and it is strange that the crop of 1871 was included, instead of the crop of 1870. Besides, the accounts between Connor and the complainants, made exhibits to their depositions, shows that Connor's debt to them was paid up to 31st December, 1870, and that he only owed a debt to the former firm of Preer, Illges & Co.

D. CLOPTON, *contra.*—1. To establish a resulting trust in lands, the money must be paid contemporaneously with the purchase: "the trust must have been coeval with the deed, or it can not exist at all."—*Botsford v. Burr*, 2 John. Ch. 404; *Tilford v. Lockwood & Toney*, 53 Ala. 120. Under this principle, on the undisputed facts shown by the record, there was no resulting trust in the lands in favor of Mrs. Coles.

2. But, whatever may be the equity or rights of Mrs. Coles as against Connor, her guardian, the complainants in this case can not be prejudiced or affected by them, being entitled to protection as *bona fide* purchasers for valuable consideration without notice.—*Coleman v. Smith*, 55 Ala. 368, 376. That they can not be charged as purchasers *pendente lite*, see *Murray v. Ballou*, 1 John. Ch. 577; *Creighton v. Paine*, 2 Ala. 158; *Winston v. Westfeldt*, 22 Ala. 769.

BRICKELL, C. J.—The purpose of the bill is a confirmation of the title the mortgagees acquired indirectly, through the purchase made by Mitchell, at the sale under the power in the mortgage executed by Connor; and to remove the cloud cast upon the title, by the decree obtained by Mrs. Coles against Connor, subsequent to the execution of the mortgage. It is only as between parties and privies that a judgment or decree is final and conclusive of the matters in controversy, or, collaterally, evidence of the facts upon which it may be founded. *Res inter alios acta alteri nocere non debet*, is an inflexible maxim in its application to judicial proceedings, shielding the stranger from injury, while it precludes him from taking benefits under judgments or decrees to which he was not a party, in the absence of any relation of privity with the parties which made him answerable for the

results of the litigation. No alienee, grantee, or assignee, is bound or affected by a judgment or decree, rendered in a suit commenced against the alienor, grantor, or assignor subsequent to the alienation, grant, or assignment; for the plain reason, that otherwise his rights of property could be divested without his consent, and the fraud or laches of the grantor could work a forfeiture of estates he had created by the most solemn conveyances. Whatever may be the force and effect of the judgment or decree against the grantor, if it is sought to be used to the prejudice of the grantee, there must be independent, distinct evidence of the facts which authorized its rendition.—*McLemore v. Nuckols*, 37 Ala. 662; *Branch Bank at Montgomery v. Hodges*, 12 Ala. 118; *Spencer v. Godwin*, 30 Ala. 355.

2. The whole theory of the original bill filed by Mrs. Coles, in which the decree against Connor was rendered, rests upon the proposition, that Connor had employed the funds in his hands as guardian, in purchasing the lands mortgaged, taking title to himself, whereby a trust of the legal estate resulted to her; or that subsequent to the purchase he applied such funds to the payment of the notes given for the purchase, thereby creating an equity in her to charge the lands with the repayment of the funds so applied. The proposition, in either aspect, is wholly unsupported by the evidence. It is well settled, that if a trustee employs the moneys of the *cestui que trust* in making a purchase of lands, and takes to himself the conveyance of the legal estate, by operation of law a trust results to the *cestui que trust;* and a payment of part of the purchase-money will, to the extent of the payment, create a corresponding trust. But, to the creation of the trust, as was said by Chancellor KENT, in *Botsford v. Burr* (2 Johns. Ch. 414), "the trust must have been coeval with the deeds, or it can not exist at all. * * * * * * The resulting trust, not within the statute of frauds, and which may be shown without writing, is when the purchase is made with the proper moneys of the *cestui que trust*, and the deed not taken in his name. The trust results from the *original transaction*, at the time it takes place, and at no other time; and it is founded on the *actual payment of money*, and on no other ground. It can not be mingled or confounded with any subsequent dealings whatever. They are governed by different principles; and the doctrine of a resulting trust would be mischievous and dangerous, if we once departed from the simplicity of the rule."

The authorities in this court, and elsewhere, following this clear statement of principle, certainly leave no room for doubt, that a resulting trust springs from the *original trans*

[Coles and Wife v. Allen, Preer & Illges.]

*action*, and that it is impossible to raise it, so as to divest the legal estate, by the application of the funds of a third person, whether he is a principal or a *cestui que trust*, to satisfy the unpaid purchase-money. Connor had purchased the lands, and received a conveyance of the legal estate, eighteen months before he became the guardian of Mrs. Coles, giving his own notes for the purchase-money; it not being then contemplated that he would become her guardian. The note for the purchase-money, first falling due, was paid with his own funds, more than twelve months before he became guardian; and the other note, about two months before he became guardian, with moneys borrowed from his predecessor in the guardianship, for which he gave to him promissory notes. Now, that no resulting trust can be raised upon these facts, is too clear for argument.

3. Nor was an equity to charge the lands with the payment of the money borrowed by Connor, created by the transaction with Upshaw, the former guardian, though it was contemplated, when the loan was made, that Connor would, on Upshaw's resignation, become guardian, and receive as money his own notes. There was then no fiduciary relation between Connor and Mrs. Coles; and when the money was received by Connor, on loan, it became his own money, for the repayment of which he was liable at all events. No diligence on his part, in keeping the money, could have absolved him from the obligation and duty of repayment, though by accidents, against which human prudence could not guard, it had been lost.

4. It is unnecessary to enter on the inquiry, whether, if there was a resulting trust, or an equity residing in Mrs. Coles to charge the lands, the mortgagees are entitled to protection as *bona fide* purchasers. The mortgage is a valid security for a debt, which we concur with the chancellor in regarding as well established; and the evidence does not establish the trust or the equity. Consequently, the mortgagees were clothed with a title, which the appellants have no right or interest in questioning. The title is derived from the mortgage—that is its origin and source; and that having been executed before the commencement of Mrs. Coles' suit against Connor, there is no room for the application of the doctrine of *lis pendens*.

Let the decree be affirmed.