[No. 648. Decided December 30, 1892.]

## LOUISA V. BOWEN, *Respondent*, v. MARY L. HUGHES, *Appellant*.

APPEAL — STATEMENT OF FACTS — TIME OF FILING — RESULTING TRUST — LANDS PURCHASED BY ADMINISTRATRIX WITH TRUST FUNDS — CANCELLATION OF DEED — UNDUE INFLUENCE — WANT OF CONSIDERATION.

A party desiring to appeal is not required to prepare his statement of facts upon the oral announcement by the judge of his decision, but has a right to wait until the written judgment is filed in the case.

Where the administratrix of an estate purchased land in her own name, and subsequently, by mistake or otherwise, was credited in her account as administratrix with a portion of the purchase price as paid on said land, no trust in the land resulted in favor of the estate.

In an action to annul a deed, executed by a stepdaughter to her mother, the evidence showed that the daughter was past eighteen years of age at the time she agreed to sell, and did not finally convey until nearly two years later; that at the time she was living away from her mother, and not under her control; that there was no affection between them for one another; that no confidential relations existed between them, and that she went and came as she pleased and engaged in any business that suited her; that the mother had expended $800 in giving the daughter a collegiate education and that the deed was given in consideration therefor; that $500, the consideration recited in the deed, was about the full valuation for said land. *Held*, That the testimony did not show such a state of facts as to warrant the conclusion that the deed was procured by undue influence, or that there was want of consideration for its execution.

*Appeal from Superior Court, Snohomish County.*

*Fishback, Hardin & McLean*, for appellant.
*Ronald & Piles*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—The motion to strike the statement of facts and dismiss the appeal in this case must be overruled.

It would be inequitable, in our opinion, and not in harmony with the spirit of the law, to compel a party desiring to appeal to prepare his statement of facts before he had access to the judgment from which he desired to appeal. The mere oral announcement by the judge of his decision in the case is not, or at least might not be, a sufficient basis upon which to prepare a statement of facts, and appellant would have no right of access to the written judgment until it was filed in the case. The other grounds of the motion, we think, are without substantial merit.

After a careful examination of all the testimony in this case, we have concluded that it must be reversed on the merits, and have, therefore, not found it necessary to pass upon the many technical questions of law raised by the appellant, as to the misjoinder of causes of action, the right of heirship of the respondent, errors in rejection of testimony, etc.

This is an action between mother and daughter. The record shows that one John Foss died intestate July 26, 1872, in Snohomish county, Washington, leaving real and personal property in said county subject to administration. He left, as heirs to his estate, his widow, who is the appellant in this action, and a stepdaughter, who is the respondent, and who, by reason of a special act of the legislature, was treated by the probate court as an heir, and whom, as we have above indicated, we will consider a legal heir for the purposes of this decision. The mother was appointed administratrix of the estate, and conducted the settlement of the same. In October, 1873, as such administratrix, she filed her final account in the probate court, which was approved and a distribution of the estate made between her and her daughter, and an order of final settlement made, wherein certain lands were set apart to the daughter and certain to the mother. The daughter, at the time of such distribution, was a child about nine years old.

There seems to be no serious question as to the fairness of the distribution of the real estate, but it is claimed by the daughter that her mother not only mismanaged the estate, but, for the purpose of defrauding her, she dishonestly and fraudulently made false returns to the probate court of her proceedings as administratrix, and that she failed to account to the probate court for all the property of the estate, and that she presented false bills against said estate, and was allowed the same; and she is now called upon to account to the respondent for the property which she received as administratrix of said estate.

It is also alleged that certain town lots in the city of Snohomish, which were deeded to the appellant, were purchased with the funds of said estate, and that they should be declared to be held in trust for said estate, and that the appellant should now account to respondent for her share of the same. On this last proposition, if it were conceded that property of an estate which has not been administered upon could be reached by an heir in this manner, it seems to us that in a transaction of this kind there can be no element of resulting trust. It is true that fifty dollars of the amount which was paid as the purchase price of the lots were included in the bill which was afterwards presented by the administratrix to the probate court and allowed in her settlement; but it seems from the evidence that it was simply a mistake and an oversight on the part both of the administratrix and of the court. Even if it were conceded that the estate of a dead person could in any manner authorize any one to invest its funds in land, there is no testimony tending to show that any such authorization was ever made by the court, or by any one interested in the estate, or that there was any understanding whatever between the administratrix and any one else that these lots were to be purchased, or that they were purchased, for the benefit of the estate. Ferguson, the grantor, who was introduced by the

respondent, simply testified that Foss before his death might or might not have talked with him about buying them. This testimony amounted to absolutely nothing, and would not have amounted to anything if it had established the fact that Foss had talked of buying the lots before he died. The contract for the purchase of these lots was made between Ferguson and Mrs. Foss on December 12, 1872, more than four months after the death of Foss, and the title was conveyed to Mrs. Foss in her individual name by warranty deed from Ferguson on December 17, 1872. The testimony shows that Ferguson looked to Mrs. Foss, and not to the estate, for his pay. There is nothing in the testimony to show that she did not buy these lots as any one else would buy property, for her own use. The funds of the estate were not used in the purchase of them, for the lots were purchased on December 17, 1872, and Mrs. Foss was charged with the purchase price, the same as she was with all other items in her account, and the estate was not charged with any portion thereof until the following March, and it certainly cannot be contended that the trust results after the title vests. If it results at all it results at the time the title vests, and must be declared, because at the time of the vesting of the title the *cestui que trust* had an equitable interest in the land purchased, and no subsequent misappropriation of the trust funds can create a trust in the lands so purchased. To create this trust it must be shown that the money of the real, and not of the nominal, owner formed at the time the consideration for the purchase, and became converted into the land. This is the doctrine announced in *Botsford v. Burr*, 2 Johns. Ch. 405. In this case, Chancellor KENT says:

"The trust must have been coeval with the deeds, or it cannot exist at all."

The case of *Merket v. Smith*, 33 Kan. 66 (5 Pac. Rep. 394), cited by respondent, is not applicable to this case;

there the funds of the estate were admitted to have been used in the purchase of the property.

The only principle upon which resulting trusts are, or can be, declared is, that the estate belongs to the party who advances the money to pay for it.    If he advances all the money, all the estate will be held in trust for him; if a portion of the purchase price, the trust will be declared in proportion; but no subsequent appropriation or advance of money to the purchaser after the purchase is completed will alter the case.    It might be the ground of some new agreement, but it would not attach, by relation, a trust to the original purchase, for the trust arises out of the circumstances of the former advancement.

The case of *French v. Sheplor*, 83 Ind. 266, is a case parallel with the one at bar.    There it was held that where a guardian purchased land for himself, upon his own credit, and took a conveyance, but afterwards, in violation of his duty, used the money of his ward in payment of the purchase money, no trust in the land resulted or arose in favor of the ward.    This is a well considered case, and the court says:

"We have been unable to find an adjudged case . . . which holds that the application of trust funds by the trustee to the payment of purchase money due on land previously sold and conveyed to him upon his own credit, creates a trust in the land in favor of the *cestui que trust*."

Here all the testimony there is on the subject is the testimony of Mrs. Foss, and she testifies that she bought the lots for her own use, and on her own credit, and that she did not know until after the commencement of this action that she had been credited in her account as administratrix for any portion of the purchase price.

"The trust results from the *original transaction* at the time it takes place, and at no other time; and it is founded on the *actual payment of money*, and on no other ground.

It cannot be mingled or confounded with any subsequent dealings whatever." *Botsford v. Burr*, 2 Johns Ch. 405, quoted and approved in *Lehman v. Lewis*, 62 Ala. 129.

The authorities in this court and elsewhere certainly leave no room for doubt that the "resulting trust springs from the original transaction, and that it is impossible to raise it, so as to divest the legal estate, by the application of the funds of a third person, whether he is a principal or a *cestui que trust*, to satisfy the unpaid purchase money." *Coles v. Allen*, 64 Ala. 98. The same principle is announced in *Jackson v. Moore*, 6 Cow. 706; *Buck v. Swazey*, 35 Me. 41; *Olcott v. Bynum*, 17 Wall. 44, and other cases cited by appellant.

So far as the other question raised in this branch of the case is concerned, we do not think that the showing made will justify us in disturbing the settlement adjudged and decreed by the probate court nearly twenty years ago. The records of the probate court show that the minor heir was represented both upon the allowance and settlement of the first account, and the final settlement and partition of the estate, by a guardian *ad litem*, a different guardian *ad litem* being appointed in each instance; and notwithstanding the fact that they now testify that they have no recollection of the circumstances, they both certified then that they had examined the petitions and accounts filed in the proceedings on behalf of the said minor, and consented to the allowance and distribution prayed for. But considering the infirmities of memory we prefer to believe their solemn avowals made at the time, rather than to rely on their memories after the expiration of nineteen years concerning matters which have not during all that time been called to their attention, and of which at best, after this long lapse of time, they could have but an indistinct recollection.

The only theory upon which the contention of the re-

spondent can be sustained in this particular is, that there was a collusion between the appellant, her attorney and the court to defraud the child, and that the final settlement of the administratrix was the result of such collusion. So that, without deciding the question whether or not the decree of the probate court could be annulled and set aside in a proceeding like this, we think the evidence in this case fails to show a state of facts which would justify the court in reaching the conclusion that such a decree should be now disturbed.

It is also claimed in this case that appellant exercised undue influence over respondent in procuring from her a deed to the one hundred acres conveyed by the daughter to the mother; that there was no consideration for said deed, and that said deed should therefore be declared null and void. It seems to us from all the testimony that there is no question of fiduciary relation in this case, and none of the cases cited containing that element are in point. Even at the time the daughter agreed to sell the land to her mother she was past the age of eighteen years, which under our law is the age of majority, she having been born October 7, 1864, and the date of her letter to her mother in which she refers to her agreement to sell being October 15, 1882. It will be observed, too, that this conclusion to sell was arrived at, not when she was living with her mother, or under her control, but when she was living in Seattle, away from her mother. And it is impossible to read the testimony in this case, especially the testimony of the daughter, without coming to the conclusion that she was a young lady of an exceedingly independent cast of mind; that she was self-assertive, inclined to follow her own inclinations, perfectly competent to protect her own interests, and the last person to be controlled against her will, even at the time she agreed to sell. But it must be borne in mind that this sale was not made until nearly two years after

this, viz., July 30, 1884, when the daughter was nearly twenty years old. This one fact tends to show that the mother was not coercing her daughter, or she would have secured the execution of the deed when she first agreed to sell, and not have waited for nearly two years, during which time her authority and influence would naturally be waning.

It may be said that the action of the appellant was not very motherly, and that she was grasping and selfish. The daughter, at least, seems to have entertained this idea, and to have resented it; but that fact was a fact which tended to break down the confidential relations which ordinarily exist between mother and daughter, relations which would render possible the subjection of the will of the daughter to that of the mother.

It appears from the testimony that the mother never resorted to corporal punishment to enforce obedience, and the daughter testifies that she did not, and further, with a manifestation of great self reliance, testifies that she *could* not, but intimates that her mother would have liked to have done so. She further testifies that her mother could not have compelled her to teach a school which she did teach. She is frank enough to testify that there was no great amount of affection between them; she went and came when she pleased, and engaged in any business that suited her. It is not claimed that the mother possessed any occult or mesmeric power over her daughter, so that, in the absence of fear or confidence or of affection, it is difficult to see upon what the claim of undue influence is based.

The mother testifies that the consideration for the deed was the money furnished to her daughter while she was at Seattle attending school, which amounted to eight hundred dollars.

Some reliance is placed upon the testimony of the probate judge, that the settlement of the administration and the partition of the estate were allowed on an oral agree-

ment of the administratrix that she would maintain and educate the minor heir at her own expense. The testimony of the judge, however, flatly contradicts his own records, which show conclusively that the settlement and partition were based upon the report and recommendation of the appraisers appointed to make an appraisement and report upon the distribution of the estate. The report was a long and itemized document, showing the condition of the estate, the account of the administratrix in detail, and exhibiting more than ordinary care in its preparation. The report was in the alternative, and was based solely upon the value of the property, and the recommendation was conditional. They recommended that in case a certain bill presented by the administratrix was allowed by the court that a certain specific distribution be made, and that in case it was not allowed a certain other and different distribution be made; and distribution and settlement were made in accordance with their recommendation, and without any other conditions attaching.

But even if it be true that the administratrix did agree to maintain and educate the minor heir, it could only be construed to mean such education as could be obtained in the neighborhood where the parties lived, or at least such education as could be obtained in the common schools of the county; and could not be construed, considering the means of these people at the time and their station in life, to mean that the child was to receive a collegiate education. There is no claim here that the child was not maintained at the expense of the mother in a style and manner which comported with her station. And it affirmatively appears that she had the full advantage of the common schools of that county; and while her ambition to receive a higher education was commendable, and her desire to live in the city and to dress more elegantly and expensively was perhaps pardonable, yet her mother was under no obligation

under the alleged agreement, to maintain her in this expensive position, and there is no doubt but that, at the time, the daughter thoroughly understood this and acted upon it.

There is some discrepancy in the testimony of mother and daughter concerning the expenses incurred by the daughter while at Seattle, which the mother paid. But it is very evident, from the testimony of the daughter alone, that the expenses were rather heavy, and as many years have elapsed between the time she lived there and the time she testified in this action, it is more than probable that many items of expense have been forgotten. Indeed, the faultiness of her memory is manifest, for on her first examination she testified that she only lived in Seattle seven months, and subsequently that she was probably mistaken, and that she was there fifteen months. The mother testified positively that she paid out for her at that time the sum of eight hundred dollars. The consideration expressed in the deed was five hundred dollars, and without reviewing the testimony in detail, we are satisfied from such testimony, including the assessment of 1884, which was two years after the contract to sell was entered into, that five hundred dollars was about the full valuation of the land.

The daughter was married December 16, 1884, less than five months after the deed was executed, and no demand was made on the mother until June, 1886, after the value of the land had been greatly enhanced. And it appears from the testimony of the daughter that she was not the most interested party in bringing the action, and in fact knew very little about the facts on which many of the allegations were based, for she frankly testifies upon cross examination that she had never heard of nearly all of these alleged frauds until they were called to her attention while on the witness stand. It seems tolerably plain to us that if any undue influence was brought to bear upon the daughter

to control her actions, it was after, rather than before, her marriage.

It is of little profit to cite authorities in this class of cases, for every case depends largely upon the circumstances surrounding it.   There can be very little controversy as to the law governing contests of this kind; the controversy is over the facts.   We do not think the testimony in this case shows such a state of facts as would warrant the court in concluding that this deed was procured by fraud, or by the exercise of undue influence, or that there was want of consideration for its execution.

Under all the circumstances of the case we conclude that the respondent has failed to make out her case in every particular, and the judgment will therefore be reversed, and the cause dismissed, with costs to the appellant in the lower court and in this court.

ANDERS, C. J., and SCOTT, HOYT and STILES, JJ., concur.