Buck *v.* Swazey.

---

BUCK, *in equity, versus* SWAZEY AND DARLING.

35   41
94   163

In the creation of a trust, no exact form of words is requisite.

Lands conveyed to one, but purchased with funds advanced for the purpose by another, are held by the grantee in trust for the latter.

Lands conveyed to one, but purchased with funds belonging jointly to himself and another, are held by the grantee in trust for the other, to the extent of his part of such funds.

If part of a debt, secured by mortgage of land, be held in trust, the trust is not dislodged, by a written agreement of the trustee " to account and pay over to the *cestui que trust*, his proportion of any moneys which may be received upon the debt.

Such a trust is assignable, and may be enforced in equity by the assignee.

In order to create a trust by the purchase of lands with the funds of another person, such funds must have been advanced and invested at the time of the purchase. If the funds be furnished subsequently to the purchase, no trust arises therefrom.

If a person, after having purchased a mortgage debt, receive funds from another person, and contract in writing to pay to him a specified part of the proceeds of the debt when received, *and in manner as received,* a specific performance of such contract may be enforced at equity, although there may be a remedy at law.

Upon a foreclosure of the mortgage, the land is to be treated as a payment upon the mortgage debt, and is held under the same trust as was the debt, and the trustee is compellable to convey the same to the *cestui que trust,* in proportion to his ownership in the mortgage debt.

Where one having, as *cestui que trust,* the right to compel a conveyance of land to him by his trustee, becomes himself by contract the trustee of another in the same land, he is compellable to convey to his *cestui que trust,* so soon as he shall himself obtain a conveyance.

In such case, to avoid circuity, the *first* trustee may be compelled to convey directly to the *last cestui que trust.*

Such a conveyance by the first trustee will protect him from the claims of his own immediate *cestui que trust.*

Allegations in an answer to a bill in equity are not of themselves evidence, unless responsive to the bill.

Of the costs to be awarded in equity suits.

BILL IN EQUITY.    Darling was defaulted.    Swazey appeared and answered.    As to him, the bill, answer and proofs appear to exhibit the following state of things : —

On September 12, 1835, one Charles Brown gave three promissory notes to Charles Trafton, secured by a mortgage of real estate.    In June, 1836, the notes and mortgage were purchased by these defendants for $1025,50, and were paid for by their joint funds.    The notes, however, were indorsed and the mortgage assigned to Darling alone, who at the same time gave to Swazey a written memorandum, (called paper A,) acknowledging him to be equally interested with Darling in the purchase, and agreeing "*to account and pay the said Swazey one half of all sums of money received on said notes, as collected.*"    In September, 1836, Swazey gave to the plaintiff a memorandum, (called paper B.,) promising to *account for and pay* the plaintiff *one sixth* part of the amount of the notes, "to be paid when received, *and in manner as received.*"

The bill, among other things, alleges that the money, with which to purchase one sixth of the notes and mortgage, was advanced by the plaintiff to Swazey, and that the same was

invested for the plaintiff in the purchase. The answer denies this allegation, and asserts that the plaintiff did not, *until after the purchase*, pay the money for the one sixth.

In 1841, Swazey gave to one G. W. Swazey a note, (called paper C,) acknowledging the receipt of $50, "*which was invested in the purchase*" of the notes, and promising "*to pay him or order his proportion of the proceeds when collected.*" That note called C was afterwards indorsed in blank to the plaintiff. The bill alleges that the making of the promise by J. Swazey to the plaintiff, and the making of the promise by J. Swazey to G. W. Swazey were known, at the time, to Darling. The answer does not deny such knowledge.

The mortgage was foreclosed by Darling. The plaintiff claims to be the equitable owner of one sixth of the land, in accordance with the memorandum of June, 1836, and also of $\frac{100}{2001}$ other parts in accordance with the note given to G. W. Swazey, and indorsed to the plaintiff. He demanded of each of the defendants a conveyance, which was refused. This suit was thereupon brought to compel a conveyance. Swazey now insists that there was no trust, as between Darling and himself, but that his rights against Darling rested wholly in contract; also, that as between himself and the plaintiff, there was no trust, but that the plaintiff's rights rested wholly in contract; and that upon such contracts the common law afforded an adequate remedy without the intervention of a court of equity.

The answer asserts, (though not responsively to the bill,) that between the plaintiff and the defendant Swazey, there are unsettled accounts, growing out of their joint interest in a brig, and claims that, upon an adjustment of these accounts, there will be due to Swazey an amount larger than all the plaintiff's claims alleged in the bill.

*Woodman*, for the plaintiff.

1. Darling, by receiving the notes and the assignment of the mortgage, became trustee for all concerned in the purchase. *Root* v. *Blake*, 14 Pick. 271; *Johnson* v. *Candage*, 31 Maine, 28.

2. Even if the plaintiff was not interested in the property at the time it was purchased by the defendants, yet Darling, by having knowledge of the plaintiff's subsequent purchase, without objecting, assented to that purchase and became trustee to the plaintiff to the extent of his purchase. *Evans* v. *Chism*, 18 Maine, 223 ; *Steere* v. *Steere*, 5 Johns. Ch. 12 ; 31 Maine, 28.

3. By the foreclosure, the plaintiff took an interest in the land in the proportion of his purchase in the notes. 31 Maine, 28.

4. Darling agreed to pay Swazey, *as the avails of the notes should be received by him.* Having received the land as payment, he is bound to convey to the plaintiff his proportion, in order to fulfill that agreement.

5. That agreement was assigned, in part, to the plaintiff. As assignee, the plaintiff will be sustained in claiming a conveyance to himself to the extent of that part. *Ensign* v. *Kellogg*, 4 Pick. 1. If Darling was bound to convey to Swazey, then Swazey would be bound, after receiving a deed from Darling, to convey to the plaintiff ; and the parties interested being all now before the Court, the Court, to avoid circuity, should decree a conveyance from him to the plaintiff.

6. Darling has been defaulted, thereby admitting the plaintiff's claim ; and Swazey is not in a position to object to the relief prayed for. It does not appear that such a conveyance will do him any wrong. The allegations that the plaintiff had received moneys on account of the brig are not responsive to the bill, and are wholly unsupported by proof.

7. There is no adequate remedy at law. There is in Swazey no *legal* title to any part of the mortgaged premises, nor has he received any of the proceeds of the notes. We therefore cannot reach *him* by a suit at *law*, and at law, there is not that privity between the plaintiff and Darling, which will enable us to maintain a suit against him.

8. With regard to costs, the case finds, that we have duly demanded a deed, which was unreasonably refused. Why then should we not recover *costs* against both defendants ?

*A. W. Paine*, for the defendant.

The plaintiff seeks either to enforce a trust, or to compel the specific performance of a contract. The case depends upon a construction of the papers used in evidence. In giving the construction, the same rules will apply, as if the suit were at law. *Dwight* v. *Pomroy*, 17 Mass. 303, 325.

The plaintiff's claim is based upon a supposed right in Swazey to compel a conveyance from Darling. But there was no such right. Darling's contract was in writing, and it was merely "to account and *pay* one half of all *sums of money* received on said notes, *as collected.*" The notion of a conveyance is carefully excluded.

The purchased notes amounted to $1427. The price paid for them and the mortgage was $1025,50 only. No one could suppose that notes, which could be purchased at such a discount, would be of any value. It was not payment of the notes that the parties expected. They considered the trade as substantially a purchase of the land only, and that it was to lie in the hands of Darling, to be rented for the equal benefit of both the purchasers.

The paper B, signed by Swazey, is the one on which the larger part of the plaintiff's claim rests. But that paper makes no mention of the mortgage, or even of the contract with Darling. Containing no allusion whatever to real estate, either expressly or by reference, how can it be made to bind the signer of it, to convey real estate ?

The same omission of all allusion to real estate marks the paper C, upon which the residue of the plaintiff's claim pretends to rest. It must result then that the plaintiff's claim to a conveyance is wholly groundless.

Another difficulty in the plaintiff's way is, that Darling's contract was not transferable. It was personal to Swazey alone.

But if transferable, the papers B and C, are not assignments of the contract A or of the mortgage.

The paper C, to G. W. Swazey, was not legally assigned to the plaintiff. It was indorsed merely in blank. Such an indorsement was insufficient.

But on the question of jurisdiction, there seems. unanswerable objections to this suit.

1. There is a complete and adequate remedy for the plaintiff at law. It is merely a. case of assumpsit in one of its simplest forms. Equity will interfere in such cases, only where there is great uncertainty as to the damages, or where the specific thing is of such a character that the recovery of damages cannot compensate for it. 2 Story's Eq. c. 18; *Russ v. Watson,* 22 Maine, 207. Here the matter contracted for is *money;* its *measure* is *certain.*

2. The contracts relied on by the plaintiff plainly admit of no such construction as to justify a claim for a conveyance or any interposition in equity.

3. The only claim of jurisdiction is under the head of *trust.* Trusts are either express or implied. An express trust is where the rights of the parties are raised and regulated by agreement. An implied trust stands on the presumed intention of the parties or is forced upon the conscience of the party by operation of law. 2 Story's Eq. 1195. Where express contracts are made, the law presumes nothing. In this case, the contracts are express, leaving no room for implications. For the paper A, on which the case reposes, is an express agreement to pay *money.* Being, then, an express trust, the only question, as before remarked, is upon the construction of the contracts. *Haskell* v. *Allen,* 23 Maine, 448; *Marston* v. *Humphrey,* 24 Maine, 513, 517, 518; *Cowan* v. *Wheeler,* 25 Maine, 267.

The case of *Johnson* v. *Candage,* cited for the plaintiff, is not applicable. It was a case of *implied* trust, and this is the case of an *express* one. *Root* v. *Blake,* also cited for the plaintiff, is not at variance from the views I have presented, but is fully in harmony with them.

APPLETON, J. — From the bill, answer and proof, it appears that, on the 12th day of September, 1835, one Charles Brown gave three several notes to Charles Trafton, and a mortgage to secure their payment. On the 27th day of June, 1836,

the defendants, Henry Darling and James Swazey, purchased these notes, but the notes and mortgage were transferred to Henry Darling though the purchase was made with their joint funds. At the same time Darling gave to his co-defendant, Swazey, the following memorandum.

"Bucksport, June 27, 1836.

"Received of Charles Trafton three notes of hand, signed by Charles Brown, and dated Sept. 12th, 1835, and indorsed by said Trafton, for the following sums, one for $283, and interest, payable in three months, one for $541,50, and interest, in one year, and one for $541,50, and interest, in two years. Also an assignment of a mortgage deed to said Trafton from said Brown, of a lot of land and premises situate in Bangor, for the security of the payment of said notes. This is to certify that James Swazey is *equally interested* with me in said notes and the *security* for the payment of the same, and I hereby agree to account and pay the said Swazey one half of all sums of money received on said notes as collected.

"Henry Darling."

On the 16th of Sept. 1836, the defendant Swazey, gave the plaintiff an agreement in these words : —

"September 16, 1836. — I hereby agree and promise to account for and pay Moses G. Buck one sixth part of the amount of three notes of hand, signed by Charles Brown and payable to Charles Trafton, dated Sept. 12, 1835, and indorsed by said Trafton, one for $283, and interest, payable in three months, one for $541,50, and interest, payable in one year, and one for $541,50, payable in two years, and interest. To be paid when received and *in manner as received.*

"Attest, S. Cobb."        "James Swazey."

In addition to the sixth set forth in the agreement last recited, the plaintiff claims to have conveyed to him the interest in the notes and mortgage specified in the following memorandum, which he claims as assignee by indorsement.

"$1025,50.        "Nov. 5, 1841.

"Received of George W. Swazey fifty dollars, which was *invested* in the purchase of three notes (described as above)

which I promise to pay him or order his proportion of the proceeds when collected, said notes secured by mortgage of real estate situate in Bangor.

"The sum invested was ten hundred and twenty-five dollars and fifty cents.                                     "James Swazey.

"Attest, H. Darling."         Indorsed "Geo. W. Swazey."

Brown and Trafton both became insolvent, and the mortgage given by Brown to Trafton and assigned to Darling, was by him foreclosed. The plaintiff seeks a conveyance of the premises mortgaged to the extent of his interest as disclosed. The requisite demand to convey has been made. Darling has been defaulted, and may be deemed as taking no exceptions to the plaintiff's claims except so far as may be necessary for the protection of his legal rights. The defendant Swazey, admits that the purchase of the notes and mortgage was made with the joint funds of Darling and himself, but denies that any trust has arisen between him and his co-defendant in consequence of such purchase, and insists that his rights as against Darling, and the plaintiff's claims as against him, rest only in contract, and that on such contracts the remedies existing at common law are ample for the protection and enforcement of all just claims, without the interposition of a court of equity.

The first question to be determined is, what were the relations subsisting between Darling and Swazey, under and by virtue of their joint purchase and of the memorandum of June 27th. The bill alleges, and the answer of Swazey admits, that the purchase was made by Darling with joint funds and on joint account. It is well settled that when one makes a purchase in his own name, but with funds belonging to another, that the purchaser holds the property thus acquired in trust for the person by whom the funds were furnished. So where it is made with joint funds and the conveyance is made to one only of the parties interested in the purchase money, he holds it in trust for his associate to the extent of the funds by him advanced. The same principle applies where securities are taken in the name of one only who may be interest-

ed, the others will be entitled to their share as a resulting trust. 2 Story's Equity, § 1206. In the absence then of any other evidence, here would seem to be a trust which a court of equity would enforce.

So where the trust is in writing, the law requires no particular form of words, by which it is to be evidenced. The letters of a party to be charged, his memoranda, notes or papers left by him and found after his decease, his answers to a bill in equity, have been a sufficient foundation for judicial action. 2 Story's *Eq.* § 1201. By the memorandum of June 27th, it appears that Swazey was equally interested with Darling in the notes transferred and the accompanying mortgage assigned to him. If this had been all, it must most unquestionably have been deemed a sufficient declaration of trust, in conformity with the decision of the Court in *Fisher* v. *Fields,* 10 Johns. 496. But the memorandum, after reciting the joint interest of the two defendants, adds these words, "and I hereby agree to account and pay the said Swazey one half of all sums of money received on said notes as collected." Does this discharge the trust obviously arising from the antecedent facts as recited, and if the notes should by levy or foreclosure be converted into real estate, leave it in the hands of Darling relieved from all trust obligation? Without the addition of these words the law would imply, in a case of a joint purchase of the notes, a promise to account for their proceeds, and this clause, merely asserting an implied promise, cannot be considered as destroying the trust, so that Darling could hold the funds or their proceeds in whatever form received free from such trust. It negatives no facts by which the trust is created.

In case of a mortgage the notes are deemed the principal and the land merely accessary thereto. When one of many notes secured by mortgage is transferred, and after such transfer the mortgagee forecloses his mortgage, he holds the land foreclosed in trust for the unpaid mortgage notes, in whose hands soever they may be, in the ratio such notes bear to

the whole debt remaining unpaid. *Pattison* v. *Hull*, 9 Cow. 747; *Johnson* v. *Candage*, 31 Maine, 31.

The notes being held in trust by Darling, the same trust would attach to the land which went to constitute their payment. The memorandum of June 27 looks only to a money payment. But if Darling were permitted, as against Swazey, to hold these lands in his own right, he would · be without remedy. If, by the notes being in whole or in part paid by a foreclosure there is no trust, and a court of equity would have no jurisdiction, — then neither a sale could be enforced nor a conveyance compelled, and the time might never arrive when Swazey would be able to derive any benefit from his investment. The equal interest between these parties is not merely in the notes, but "in the security for the payment of the same." By the express declaration of Darling in writing, the interest of Swazey is not to be confined to the mere notes but attaches likewise to the security. By operation of law, the notes become paid in whole or in part by a foreclosure of the mortgage given for their security. The security thus changes its relation and becomes principal, but the interest of Swazey equally exists therein, when the title became perfected by foreclosure as when the real estate was collateral only to the notes.

As between Swazey and Darling, the conclusion is that a trust arose and that Swazey might compel a conveyance to the extent of his interest. He was the *cestui que trust* and had an interest which he might assign or sell and which by the laws of descent would pass to his heirs.

The bill alleges that the plaintiff Buck, furnished funds to the amount of one sixth, and that Swazey, as his agent, invested them in the purchase of so much of the notes and mortgage. This is explicitly denied by the answer, which states that the purchase was made by Darling with his funds and those of the defendant Swazey; and that Buck subsequently to the purchase advanced the funds for which the receipt of Sept. 16 was given. If the purchase had been made with money advanced by Buck to Swazey and by

Swazey furnished to Darling, if no equities of the latter intervened, the plaintiff Buck, might follow his funds as far as they could be traced and hold the estate purchased to the extent of such advance. 2 Story's Eq. § 1259. But while a trust will thus be enforced, it must arise at the time of the purchase if at all. No resulting trust can be created by after advances or funds subsequently furnished. *Rogers* v. *Murray,* 3 Paige, 390; *White* v. *Carpenter,* 2 Paige, 238. The allegations in the bill being denied, there is no evidence of any joint interest on the part of Buck in the funds by which the notes were purchased and he cannot therefore on that ground charge the estate as trust property.

By the contract of Sept. 16, Swazey gave the plaintiff certain rights. The receipt of that date does not disclose in whom the legal title to the notes and mortgage was vested. But having a trust estate in notes and mortgage and consequently the means to coërce a conveyance, Swazey would be equally compelled to convey when he should acquire a title, as if the title had been in him at the time of making such contract. For a valuable consideration, Swazey agreed to account for and pay one sixth of the proceeds of the Brown notes " *when received and in manner as received.*" So far therefore as regards him, the case stands as if the notes and mortgage had been originally transferred to him and he had foreclosed the mortgage. If then the land was taken in payment, Swazey would be bound to make the same payment. The clause was obviously beneficial to him, as he would by the terms of his agreement be at once discharged upon paying or tendering payment " *in manner as received.*" In no other mode could he perform his stipulations. The case then resolves itself into the common one of a contract to convey specifically, and which the Court will enforce though the party may have a remedy at common law. *Ensign* v. *Kellogg,* 4 Pick. 1. By this contract Buck became entitled to his part of whatever might be received in payment of the notes therein described, " to be paid when received and in the manner received." If the title to the notes and mortgage had been in

Swazey, a trust would have been created in his favor the execution of which a court of equity would have compelled. 1 Greenl. Cruise on Real Property, 355. As between them, the trust none the less arises, though Swazey, instead of having the title in himself, has the right of obtaining it by equitable process against his trustee.

By the memorandum of November 5, 1841, given by James Swazey to George W. Swazey, it is clearly admitted that fifty dollars had been *invested* in the original purchase of the Brown notes and mortgage by the latter. As the notes have by the foreclosure been paid in whole or in part by the land mortgaged, the same investment, and to the same relative amount, must be deemed as continuing in the land after such foreclosure, as existed previously in the notes.

By the terms of this contract, the interest was subject to the order of the party interested, and though that would not entitle the assignee to maintain in his own name an action at common law, yet in equity the rule is well settled to be otherwise. 2 Story's Eq. § 1040.

The interest of James Swazey, in the original transaction, is one which would pass by assignment or transfer or by will. If these contracts signed by him were to be viewed as assignments *pro tanto*, of his interest in the notes and mortgage, the same results would follow. In *Lett* v. *Morris*, 4 Sum. 607, an order to pay out of a particular fund was decreed to be an equitable assignment to such extent. In all cases of assignment of a debt the assignee will be entitled to the full benefit of such securities as the assignor may have, unless there is an express stipulation otherwise between the parties. *Pattison* v. *Hull*, 9 Cow. 747.

As in this case the plaintiff is ultimately entitled to a conveyance, Darling must be decreed to hold the land in trust for him and a conveyance may be directly enforced in his favor. 2 Story's Eq. § 1250. The conveyance when made will discharge the defendant Darling, from so much of his contract as shall thereby have been performed.

The answer of Swazey refers to certain unsettled matters

arising out of his and the plaintiff's joint interest in the brig Mattawamkeag, upon an adjustment of which he claims that a balance would be his due. The answer, except so far as responsive to the bill, is not evidence. Whenever matter in discharge or avoidance is asserted or new and substantive claims are advanced, they must be established by proof. No proof whatsoever in reference to the claims upon which the defendant Swazey relies, as an excuse or justification for withholding the plaintiff's rights, has been offered. They cannot therefore be regarded.

As Darling has submitted to a default and is to be regarded as a mere stakeholder, the conveyance as prayed for against him must be decreed, but without cost on his part. As to Swazey, the plaintiff is entitled to a decree against him with costs.

SHEPLEY, C. J., TENNEY, WELLS and RICE, J. J., concurred.