In Equity.

## NORTHWESTERN MUTUAL LIFE INSURANCE CO.

*vs.*

## CHARLES H. COLLAMORE AND JOSEPHINE COLLAMORE, Admx.

## Knox.    Opinion December 23, 1905.

*Gift Inter Vivos or Causa Mortis.    Declaration of Trust.    Declaration in Contemplation of Suicide Ineffective.    Evidence.*

1. To constitute a gift, inter vivos or causa mortis, there must be a transfer of possession under circumstances indicating an intention thereby to at once transfer title as well as possession irrevocably. Enclosing the article in a sealed envelope and handing the package to another with instructions to keep, but not to open it until after the death of the depositor, does not indicate such intention.

2. A declaration of trust to be effective must be explicit, absolute and complete, vesting the equitable title in the beneficiary at once, though the transfer of the legal title may be deferred till the happening of some event sure to happen, as the death of the declarant. If the transfer of the legal title is to be contingent on an event which though expected may not happen, the declaration is ineffective. Thus a declaration made in contemplation of suicide and to direct the disposition of the property after death by suicide, is ineffectual since the intention to commit suicide may be abandoned.

3. The evidence in this case does not satisfy the court that the property in the insurance policy in question was effectively transferred either by delivery or by a declaration of trust.

In Equity. On report. Decree according to opinion.

Bill of interpleader to determine whether the amount of a life insurance policy, issued by the plaintiff company to Ellison C. Collamore should be paid to his estate, he being deceased, or to his brother, Charles H. Collamore. After the death of the said Ellison C. Collamore, the said Charles H. Collamore claimed that payment of the insurance policy should be made to him alleging that the policy had been assigned to him by the deceased in his lifetime. Thereupon

the said Josie Collamore, widow of said deceased, and who was afterwards appointed his administratrix, brought a bill in equity to have the plaintiff enjoined from paying said insurance policy to said Charles H. Collamore pending the determination of the bill and decree thereon. An injunction was granted as prayed for in said bill. The said Charles H. Collamore also brought an action at law against the plaintiff to recover from it the amount of said insurance policy. The said Josie Collamore, after her appointment as administratrix of the estate of said deceased, likewise brought an action of law against the plaintiff to recover from it the amount of said insurance policy. Thereupon this bill of interpleader was brought. At the hearing on the bill of interpleader in the court of the first instance, the facts were submitted in the form of an agreed statement, and the case was reported to the Law Court with the stipulation that "upon so much of the agreed statement as is legally admissible" the Law Court to determine the rights of the defendants and make decree in accordance therewith.

## AGREED STATEMENT.

On September 22, 1899, Ellison C. Collamore took out with the Northwestern Mutual Life Insurance Co. a tontine policy of insurance upon his life for the sum of fifteen hundred (1500) dollars, payable to his estate.

At the time of taking out such insurance and at the time of his death he had living a wife and one son.

Clause six of the policy provides "If this policy shall be assigned, a duplicate of the assignment shall within thirty days be given to the company, and due proof of interest shall be produced on making claim."

On March 6th, 1900, he signed an assignment of said policy recited to be in consideration of love and affection, running to Charles H. Collamore, his brother; but therein reserving to himself the right to make choice of options contained in the policy, and to receive the whole benefit thereof himself without the consent of the assignee; and in event of the death of the assignee before the policy became payable on account of the death of the insured, the same was to be payable to his estate.

This policy and assignment was in the possession of the insured on January 6th, 1904, on which date he delivered a sealed envelope to Charles H. Collamore, which it finally turned out contained the insurance policy and assignment with some other papers; but the contents of the envelope was unknown to Charles H. Collamore until after the death of the insured.

The insured died by his own hand on March 16th, 1904. Just prior to committing suicide the insured sent a letter to Charles H. Collamore, which was received after his death, in an envelope post marked March 16, and which letter read as follows:

Rockport, Feb. 9, 1904.

Well, Charles, as I shall not see you again I will send you this receipt, you will have it, show, and Joe cannot make enny trouble about it. I told Geneva that I would fix my board bill on that note; I have fixed it by making the interest four per sent, and I thought that would satisfy you for what trouble and my board, and the trouble while I was with you. You will have the money to pay this note when you collect the Insurance, but don't pay it too fast, for they will spend it if you do; and you can take the interest on some of the other money and pay them their interest. You will know what I about the other money when you open the envelope I gave you. Don't wait too long before you attend to it either. It is no need of me telling you my troubles for it will do you no good or me either, but I think that I am tired of living, and have been for the past three years, I cannot stand and strain enny longer, so I hope you will do all you can for Harry. I have fixed my things as I thought best for you and Harry and our sister, and I hope you will do what I have asked you to do, for I have left it as I thought best. I shall take a dose of poison which I have had ready for a long time, and hoping I will meet you all in a world where trouble never comes, Good bye.

From your brother,

E. C. Collamore,

Rockport, Maine.

In the sealed envelope, which after receiving the above Charles H. Collamore opened, was contained the two following letters, one of them in a smaller envelope:

Rockport, Oct. 13, 1903.

To Charles H. Collamore from E. C. Collamore:

Charles:

If enny thing happens to me I want you to collect my Life Insurance and divide it between yourself and Harry and your sister. Take Five Hundred Dollars for yourself; Five Hundred Dollars for Harry P. Collamore and the reast for your sister, Syreno A. Andrews. I want you to take care of Harry's until he is 17 years old before you give him enny of it; then I want you to give it to him, or put it where he can get it, to finish his schooling with; don't give it to all at one time so Joe can get it and go through with it. I want you to help him all you can; he is not to blame for what he has done, his mother is to blame for it all. You will have to use your own judgment about Syreno's money; you will have to let her have a little at a time when she needs it the most. You will have to get her plaster for her when I am gone. Be shure and keep enough of her money to bury her when she dies, for they will not have enough in the family. If there is enny of her money left when she dies you divide it between yourself and Harry. I have fixed your note so it will be four per cent interest. This is the last favor I shall have to ask of you and I want you to have me buried with mother, at West Rocksport.

E. C. Collamore.

Rockport, Jan. 31, 1904.

Charles:

You will notify C. R. Dunton, of Bangor Exchange, of my death, for he is the Insurance Agent for the North Western, and will see that you get the money that will fall due there. You use it as I have asked you to in the other letter I have left you. Be shure and do the best you can for Harry, and God will bless you.

Good bye, from your brother,

E. C. Collamore.

Instructions in relation to the envelope, as given orally to Charles H. Collamore, were at different times said by him to have been as follows:

"You keep it and if anything happens to me you open it," and "Keep that; don't open it unless something happens to me."

This was all of the communication made at the time of the delivery of the envelope and nothing further was said about the envelope or in relation to property matters after the delivery.

Other envelopes had previously been left in a similar way; but the contents of envelopes so left were never known to Charles H. Collamore and might or might not have contained the insurance policy and assignment Charles H. Collamore had received, but drew the inference that said packages did contain these papers among other things; but no direct statement to that effect was made, and the packages held previously were returned to the insured.

Prior to the death of the insured's mother in 1899 the insured had been in the habit of giving her similar matters to keep for him.

The insured was not indebted to said Charles H. Collamore, but on the other hand Charles H. Collamore was indebted to his brother for borrowed money, and is still indebted to his estate, he having given his note therefor.

The assignment had no relation to any business transaction between the brothers.

Josie Collamore, the widow of Ellison C. Collamore, was appointed administrator of his estate. Charles H. Collamore claims the insurance under the assignment in question. Josie Collamore claims to collect the same. as administratrix to be disposed of as provided by statute.

On the bill decree was made that the money should be paid into court and the defendants were ordered to interplead, decree was complied with and each of the defendants in the bill of interpleader makes answer setting up their respective claims upon the facts above stated.

*L. F. Starrett*, for plaintiff.

*L. M. Staples*, for defendant, Charles H. Collamore.

*Arthur S. Littlefield*, for defendant, Josie Collamore, Admx.

SITTING: EMERY, WHITEHOUSE, STROUT, POWERS, PEABODY, SPEAR, JJ.

EMERY, J. The question submitted on this bill of interpleader is whether the amount of a life insurance policy, issued by the plaintiff company to Ellison C. Collamore, is payable to his estate, he now being deceased, or to his brother Charles H. Collamore. The policy is admittedly payable to his estate unless the court shall find from the agreed statement of facts that the legal or equitable title to it was effectually transferred by him before his death to his brother, the other claimant.

There certainly does not appear to have been any such delivery of the instrument of assignment or of the policy itself to the brother, as was necessary to constitute a transfer of any title, legal or equitable. Although he placed them in the hands of his brother, there was nothing said or done indicating that it was an irrevocable gift, or intended as such. The papers were in a sealed envelope. No statement was made of what the envelope contained or that the contents were a gift. He simply told his brother to keep it and not to open it unless something happened to him. The brother did not know the contents of the envelope until he opened it after the death of Ellison. Other envelopes had previously been left by Ellison with the brother in a similar way and had been taken back, but the contents of those envelopes are unknown. Prior to his mother's death in 1899, Ellison had been in the habit of giving her similar packages to keep for him.

All that can be reasonably inferred from the agreed statement is that Ellison entrusted the envelope to his brother as bailee, to be kept for him (Ellison) and not to be opened unless something happened to him. Had Ellison called for the envelope before his death the brother would have been obliged to give it up. He clearly had acquired no title to it or its contents by its being thus placed in his hands. Indeed, the brother frankly concedes no completed gift, either inter vivos or causa mortis, can be inferred from the facts stated.

He urges, however, that a declaration of trust by Ellison, in favor of his brother and others, can and should be inferred. For this he

relies upon two letters of Ellison found in the envelope with the policy, and another sent by him through the mail just before his death by suicide.

A declaration of trust to be effectual must be explicit, unconditional and complete. If it be tentative, or conditional, or made subject to reservation, it is not a perfected declaration of trust and will not be enforced by the courts. True, a future time or event may be fixed for the legal title to vest in the beneficiary, such as the death of the donor, but the declaration must be of a present trust vesting the equitable title in the beneficiary thereby and irrevocably. One may dispose of property during his life by gift or declaration of trust, but to do so he must divest himself of the ownership of what he gives. If he desires to retain ownership during his life and yet fix its disposition after, or in case of, his death he must do so by will. The foregoing legal principles are established by the decisions of this court in *Bath Savings Inst.* v. *Hathorn,* 88 Maine, 122, and *Norway Sav. Bank* v. *Merriam,* 88 Maine, 146, and buttressed by the numerous authorities there cited as well as by the reasoning of the opinions.

Turning now to the letters and reading them in the light of the other facts, it is clear they do not constitute an effectual declaration of trust. Whatever statements he made of his wishes, he had not gone so far that he could not recall them. The envelope was still unopened. Even after sending the letter dated Feby. 9, but mailed March 16, he could have repented of his design, and, notwithstanding his letters, could have enforced the return of the sealed envelope and its contents.

The deceased evidently desired to retain ownership to the last, and yet deprive his widow of her interest in his estate. This under our law he could not do. *Brown* v. *Crafts,* 98 Maine, 40.

It must be decreed that the money due on the policy be paid to the administratrix Josie Collamore, less the costs and reasonable counsel fees of the plaintiff which may be deducted by the plaintiff from the fund.

*Decree to be made accordingly.*