SALMON LAKE SEED COMPANY ET AL *vs.* FRONTIER TRUST COMPANY.

Aroostook.      Opinion February 25, 1931.

*J. Frederic Burns,*
*Donald C. O'Regan,* for plaintiffs.
*Cook, Hutchinson, Pierce & Connell,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

DUNN, J.   The Superior Court Judge presiding in Aroostook
County reserved this case, the parties consenting, for final deci-
sion by this court, on a report of so much of the evidence as is
legally admissible.

Where, as here, the certificate signed by the judge does not state
to the contrary, technical questions of pleading are deemed to be
waived. *Pillsbury* v. *Brown*, 82 Me., 450. The initial inquiry of the
present report is whether, giving the permissible and relevant evi-
dence the weight and consequence that would be exacted if a jury
were trying the facts, the plaintiffs are entitled to recover. *Tatro* v.
*Railroad Co.*, 108 Me., 390; *Cullinan* v. *Tetrault*, 123 Me., 302.

Nonperformance of a contract in writing is alleged as the cause
of action. The contract, omitting signatures, reads as follows:

"This memorandum made this 6th day of May, 1929, be-
tween Salmon Lake Seed Company, a corporation, and Arthur
R. Gould, hereafter called the parties of the first part, and
Frontier Trust Company, a corporation, party of the second
part, witnesseth: That the said parties of the first part have
sold and agree to deliver to the party of the second part at
such loading point on the Aroostook Valley Railroad or on
the Bangor and Aroostook Railroad, south of Caribou, as the
parties of the first part may elect, Four Thousand and Six
Hundred barrels of Green Mountain variety, U. S. Grade No.
1 potatoes, during the digging season of 1929 in lots of not
less than Two Thousand barrels each.

"In consideration of the aforesaid agreement the said Fron-
tier Trust Company agrees that upon performance of said
agreement it will forever release and discharge said Salmon
Lake Seed Company from all liability upon the notes signed
by the said Salmon Lake Seed Company and now held by it
amounting to the principal sum of $8,500.

"The said Frontier Trust Company further agrees that in
the event that it shall receive from said potatoes when sold by
it a net amount, after payment of expenses incurred in han-

dling said potatoes, in excess of the sum which may be due on said notes with interest thereon that it will pay over to the said Salmon Lake Seed Company such surplus."

The breach declared was that defendant did not sell the potatoes at the best market price, within a reasonable time after they had been delivered, and pay to the Salmon Lake Seed Company, one of the plaintiffs, the difference in money between what that company owed defendant on certain promissory notes and the net proceeds that there would have been from a sale at that time, but disposed of the potatoes for a wholly inadequate sum, and only credited the company with $66.04.

The defense is based upon the general contention and theory that nowhere, by the words and symbols employed in the statement of the contract, did defendant agree to await delivery of the potatoes before selling them, and that, even inferentially, such intent does not appear.

Opposite counsel agree that, in its first and second paragraphs, the written instrument evidenced, not a present sale of potatoes for future delivery, but an executory agreement to barter potatoes for notes.

Plaintiffs' counsel contends that the third paragraph of the contract imposed on the defendant, in respect to selling the potatoes, an undertaking personal in nature, inhibiting assignment of the contract. Counsel for the defendant argue that the practical interpretation and construction of the contract by the parties thereto, as shown by their acts and declarations during its performance and before this controversy arose, is inconsistent with the ground on which plaintiffs now claim to maintain their action.

The issue turns, the briefs concede, upon the interpretation afforded the third paragraph of the contract, read, of course, in connection with the rest of the writing. Actual intention, as expressed in the writing, is the chief thing to be looked to and ascertained. The subject-matter of the contract, and the situation of the parties when the contract was made, are to be considered in determining the meaning of the language used. Words are to be understood in their common and everyday sense, and all parts of

the contract construed so as to be given effect. 1 Chitty on Contracts, 103 *et seq.*

When the contract which covers this action was entered into, the Federal Land Bank had a mortgage on the farm of the Salmon Lake Seed Company. The unsecured liabilities of that company totaled $36,500. Defendant had asked for payment of promissory notes, one maturing in August, and the other in September, aggregating the principal sum of $8,500, from that season's potato crop. "Futures," the term which applies in Aroostook county to transactions in potatoes to be grown, or acquired, prior to delivery in the following fall, were quoted at $1.10 a barrel. Embarrassed by debts, and without available assets, plaintiff company, unless it were aided financially, could not operate its farm. Indeed, the institution of receivership proceedings seemed not unlikely.

The individual plaintiff, Mr. Arthur R. Gould, a man of pecuniary responsibility, came to the aid of the company, and the contract in suit was made.

The joint promise of the plaintiffs that, during the digging season of 1929, they would deliver to defendant a given quantity of a specified variety of potatoes in minimum lots, is expressed in not very difficult words. It is impossible to read the language without becoming convinced of the idea which it was intended to convey.

In consideration of that promise, to analyze the second paragraph of the instrument, defendant promised that it would, on performance by plaintiffs of their part of the contract, forever release and discharge the company from its notes. Otherwise stated, regardless of the market price, defendant would credit, taking interest on the notes into consideration, approximately $1.90 for every barrel of potatoes delivered by plaintiffs, or 80 cents more than the market price for futures at the time of the contract. The meaning of the words employed is not open to reasonable doubt.

One day, later in the month of the contract, the persons who had represented the respective corporations in the execution of that instrument, together went to a storage house to engage space for the potatoes to occupy when they should be brought there.

Late in June, or early in July, the testimony is indefinite which, these two men met again. Said one, addressing his speech to the

other, "If potatoes keep on going we will soon be able to sell the contract for enough to get the bank out whole." The one addressed replied, "I hope you will," or "I hope you can."

On July 13, defendant agreed in writing "to sell and convey . . . (the) contract" to one F. H. Vahlsing of New York City, for $1.90 a barrel. Of this, Mr. Sands, the seed company representative, had notice by letter, but did not reply. No notice appears to have been given the other plaintiff.

Instructed by defendant to deliver the potatoes to Mr. Vahlsing, or his firm, plaintiff company proceeded accordingly. From time to time the company advised defendant as to the number of wagon loads delivered. On check up, full delivery was two barrels short, whereon a check for $4.00 was sent defendant by plaintiff company. When the check was in hand, on October 29, 1929, defendant cast up the account, stamped the last note paid, and credited the company with $66.04.

The plaintiff, Mr. Gould, never had actively to do with performance of the contract. He spoke, after the contract, and for the first time, in December, to insist the want of complete performance by defendant.

None of the testimony is in dispute. Fair market value of the potatoes, when and where delivered, stipulation fixes at $3.00 per barrel.

What Mr. Sands said, on being told that defendant was looking forward to selling the contract without loss, was but tantamount to the expression of gratification that there was chance of such a result. No other inference can reasonably be drawn therefrom.

The assignment to Mr. Vahlsing was only of the benefit of the contract, and not of the conjoined obligations. From defendant's letter, Mr. Sands may have had reason to understand that the whole contract had been assigned, but not to understand that the assignment was inclusive of but part of it. The words communicated to him, as testified to, (the letter itself having been lost or destroyed), did not say so. On the contrary, those words told him, and only told him, for plaintiff company, to deliver the potatoes to Mr. Vahlsing, or his firm. The company stood jointly obligated

to make delivery of the potatoes to the defendant, or, what is the very same thing, to its nominee, in pursuance of the contract. Plainly, in the circumstances, the silence of Mr. Sands did not preclude the parties to the contract from recovering thereon.

There was, by and between the parties, no substitute agreement. Nor was a new party introduced into a new contract, by novation, as it is usually called, with consent of all the parties. The contract in suit never was extinguished. Plaintiffs never could have required, on delivery of the potatoes to the nominee, that that nominee surrender the promissory notes. The nominee does not appear to have had, or to have been entitled to, possession of the notes. The notes, which plaintiffs introduced into the evidence, were discharged by the defendant.

An agreement to deliver goods is, speaking broadly, assignable by the person to whom the goods are to be delivered, but all rights under contracts may not be assigned. Williston on Contracts, Sec. 413. In private affairs everybody has a right to choose with whom he will contract. *Coast Fisheries Co.* v. *Linen Thread Co.*, 269 Fed., 841. In the phrase of Lord Denman, "You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract." *Humble* v. *Hunter*, 12 Q. B., 310, 317. One party to a contract cannot have another person thrust upon him without his consent. *Arkansas Valley, etc., Company* v. *Belden Mining Company*, 127 U. S., 379, 32 Law ed., 246. "When rights arising out of contract are coupled with obligations to be performed by the contractor, and involve such a relation of personal confidence that it must have been intended that the rights should be exercised and the obligations performed by him alone, the contract, including both his rights and his obligations, cannot be assigned without the consent of the other party to the original contract." *Delaware County* v. *Diebold Safe Company*, 133 U. S., 473, 33 Law ed., 674.

An executory contract for personal services, or a contract otherwise involving personal credit, trust, or confidence, cannot be assigned by the sole act of one of the parties thereto. Pollock on Contracts, 4th ed., 425; Page on Contracts, Sec. 1262; *Johnson* v. *Vickers* (Wis.), 120 N. W., 837; *Edison* v. *Badka* (Mich.),

69 N. W., 499; *Sloan* v. *Williams* (Ill.), 27 N. E., 531; *King* v. *Batterson*, 13 R. I., 117, 120; *Swarts* v. *Narragansett, etc., Company*, 26 R. I., 388; *Wooster* v. *Crane & Company*, 73 N. J. E., 22; *Coast Fisheries Co.* v. *Linen Thread Co.*, supra; *Thomas-Bonner Company* v. *Hooven, etc., Co.*, 284 Fed., 377; *Winchester* v. *Howard*, 97 Mass., 303; *Boston Ice Company* v. *Potter*, 123 Mass., 28; *New York, etc., Company* v. *Kidder Press, etc., Company*, 192 Mass., 391, 405; *Arkansas Valley, etc., Company* v. *Belden Mining Company*, supra; *Delaware County* v. *Diebold Safe Company*, supra; *Burck* v. *Taylor*, 152 U. S., 634, 38 Law ed., 578.

The contract here sued was one by which the defendant not only agreed that, on delivery of the potatoes, it would discharge the promissory notes, but defendant further agreed, in the third paragraph, that, in the event there were received, not from a sale of the contract, but from a sale by defendant of the potatoes (impliedly with reasonable prudence and within a reasonable time subsequent to delivery), an amount of money over and above what would be requisite to pay the notes and defray incidental expenses, defendant would account for the excess to that party to the contract the corporate name of which is the Salmon Lake Seed Company. Performance on the part of the assignor, by the terms of the original contract, was to follow the performance on the other side. Williston on Contracts, Sec. 419.

The undertaking to sell the potatoes was personal to the defendant. Williston on Contracts, supra. It was a material ingredient of the contract, and manifested the intention of the parties that the contract should not be assignable. The security for the performance of the promise of the defendant was its character, ability, honesty, and financial stability. *Humble* v. *Hunter*, supra. Plaintiffs have the right to the benefit they anticipated therefrom. *Arkansas Valley, etc., Company* v. *Belden Mining Company*, supra.

Decision has been indicated already. Judgment goes for the plaintiffs. Justice so requires. Williston on Contracts, supra.

On delivery of the potatoes, the market price was $3.00 a barrel. Defendant allowed therefor, by discharging the notes, as accurately as the record shows, $1.90 a barrel. The difference is $1.10. Four thousand five hundred and ninety-eight barrels of potatoes were

actually delivered; compensation made for two other barrels, thus filling the contract quota. Incident to delivery and sale, defendant incurred no expense. Defendant had credited plaintiff company, before action was begun, with $66.04. Damages, thus far, figure $4,993.96. In addition, plaintiffs, as compensation for delay in payment, are entitled to interest from the date of the breach of the contract. *New York, etc., Company* v. *Kidder Press, etc., Company*, supra. From the stipulation, it is deducible by inference that the date of the breach was October 29, 1929.

> *Judgment for plaintiffs for* $4,993.96, *and interest from October* 29, 1929.