Burton G. SHIRO, Trustee of the Estate
of The American Fiberlast Com-
pany, Bankrupt

v.

Gordon W. DREW.

Civ. No. 5–111.

United States District Court
D. Maine, S. D.

June 30, 1959.

**496**

John J. Flaherty, Portland, Me., for plaintiff.

Vincent L. McKusick, Portland, Me., for defendant.

GIGNOUX, District Judge.

This is an action brought pursuant to the provisions of Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96, by plaintiff as trustee in bankruptcy of the American Fiberlast Company to recover as a voidable preference the sum of $2,-056.87 paid by the bankrupt to defendant on February 11, 1957.

The facts necessary to a decision in the matter have been stipulated by the parties and, as stipulated, are so found by the Court as follows:

In August or September, 1956 the American Fiberlast Company obtained a contract from Hazeltine Electronics Corporation for the construction of a twenty-one foot Radome [1] for the price of $4,-900. The purchase order for the Radome was delivered by Fiberlast to defendant and retained by him until February 11, 1957 for use in attempting to borrow money for the Corporation to perform the contract.

On November 1, 1956 Fiberlast, by Joseph L. Brewster, its president, executed under its corporate seal and delivered to J. Riker Proctor and defendant the following instrument, which was in letter form on the corporate stationery:

"Nov. 1, 1956
"To J. Riker Proctor and Gordon L. Drew
"Gentlemen:
 "Whereas The American Fiberlast Co. has received a contract for a 21' Radome from Hazeltine Electronics Corp. totaling $4900.00 but is unable to finance the purchase of the necessary materials and labor to construct the dome—the American Fiberlast Co. agrees that any money advanced by Mr. Proctor and Mr. Drew for the specific expense of manufacturing the Radome will be paid immediately to Mr. Proctor and Mr. Drew upon receipt of Hazeltine's remittance irrespective of any other demands from other creditors.

"The American Fiberlast Co.
 (Corp.
"/s/ J. L. Brewster Seal)
"by Joseph L. Brewster,
 President"

Subsequent to November 1, 1956 defendant loaned to Fiberlast the sum of $2,056.87 for the specific purpose of permitting it to perform its contract with Hazeltine. This amount was loaned by defendant in reliance upon the instrument of November 1, and the money so loaned was in fact used by Fiberlast for the performance of the Hazeltine contract. With the help of these funds Fiberlast completed the contract and received the $4,900 contract price from Hazeltine on February 11, 1957. On the same date Fiberlast repaid to defendant the $2,056.87 here in issue.

Fiberlast was adjudged a bankrupt on petition of J. Riker Proctor and two others filed on February 20, 1957. The stipulation recites that at all times material hereto Fiberlast was insolvent; defendant had reasonable cause to believe Fiberlast was insolvent; and there were in existence creditors of Fiberlast, other

1. A Radome is a plastic cover for out door radar equipment.

than defendant, who have not been repaid their debts.

Section 60 of the Bankruptcy Act provides in part as follows:

Sec. 60 *"Preferred creditors*

"a. (1) A preference is a transfer * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

\* \* \* \* \* \*

"b. Any such preference may be avoided by the trustee if the creditor receiving it * * * has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property * * *. For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

On the stipulated facts, the disputed payment was concededly a transfer of property by a debtor, while insolvent, made within four months before the filing of a petition in bankruptcy, for the benefit of a creditor, who had reasonable cause to believe that the debtor was insolvent, the effect of which was to prefer that creditor. Thus the only question for determination by the Court is whether or not the sum of $2,056.87 was transferred to defendant "for or on account of an antecedent debt." On this issue defendant contends that the letter of November 1, 1956 was either a partial assignment or a declaration of trust by Fiberlast of a portion of the proceeds of the Hazeltine contract, and that the repayment of his loan was, in consequence, not "for or on account of an antecedent debt." Plaintiff's position is that the letter was a mere promise to pay out of a particular fund, and that the subsequent payment was accordingly "for or on account of an antecedent debt," preferential and voidable.

█ With respect to defendant's first contention, it is clear that if the instrument of November 1, 1956 was a partial assignment [2] given as security for loans to be made to Fiberlast by defendant, no preference occurred when the corporation repaid the $2,056.87 subsequently loaned it by defendant. Doggett v. Chelsea Trust Co., 1 Cir., 1934, 73 F.2d 614. It is equally clear that if the instrument was no more than a promise to pay from a particular source, the repayment to defendant was in satisfaction of a pre-existing debt and preferential. See Lone Star Cement Corp. v. Swartwout, 4 Cir., 1938, 93 F.2d 767, 769. Decision of this aspect of this case consequently hinges upon the proper construction of the instrument of November 1, 1956—a construction controlled by the law of Maine, where the instrument was executed. Manchester Nat. Bank v. Roche, 1 Cir., 1951, 186 F.2d 827, 829; Lone Star Cement Corp. v. Swartwout, supra, 93 F.2d 770; In re Dodge-Freedman Poultry Co., D.C.N.H.1956, 148 F. Supp. 647, 650, affirmed per curiam sub nom. Dodge-Freedman Poultry Co. v. Delaware Mills, Inc., 1 Cir., 1957, 244 F. 2d 314.

 No Maine case succinctly sets forth the requisites of a valid assignment. However, it is hornbook law that an assignment is an act or manifestation by the owner of a right which indicates his intention to transfer, without further action, that right to another. See Restatement, Contracts § 149(1)

---

2. A partial assignment is valid in Maine. National Exchange Bank of Boston v. McLoon, 1882, 73 Me. 498.

(1932). And the courts have uniformly recognized that an agreement to pay out of a particular fund, without more, is not an assignment, but that to constitute an assignment there must be a manifestation of an intention by the assignor to relinquish control of the right assigned and to appropriate that right to the assignee. Christmas v. Russell, 1871, 14 Wall. 69, 84, 81 U.S. 69, 84, 20 L.Ed. 762; Lone Star Cement Corp. v. Swartwout, supra; B. Kuppenheimer & Co. v. Mornin, 8 Cir., 1935, 78 F.2d 261, 101 A.L.R. 75, certiorari denied 1935, 296 U. S. 615, 56 S.Ct. 135, 80 L.Ed. 436; Farmers' Bank v. Hayes, 6 Cir., 1932, 58 F. 2d 34, 37, certiorari denied 1932, 287 U. S. 602, 53 S.Ct. 8, 77 L.Ed. 524; East Side Packing Co. v. Fahy Market, 2 Cir., 1928, 24 F.2d 644, 645; In re Dodge-Freedman Poultry Co., supra, 148 F. Supp. 650; 2 Williston on Contracts § 428 (Rev. ed. 1936). While no particular words are required for an assignment (See e. g. Wade v. Bessey, 1884, 76 Me. 413), the intent to transfer a present interest must be manifest, and the assignor must not retain any control over the right assigned or any power of revocation. In fact, it frequently has been said that the test is whether or not the debtor would be authorized to pay the amount directly to the person claiming to be the assignee, without further action or consent by the assignor. See Christmas v. Russell, supra, 14 Wall. 84, 81 U. S. 84; Farmers' Bank v. Hayes, supra, 58 F.2d 37; East Side Packing Co. v. Fahy Market, supra, 24 F.2d 645; 2 Williston on Contracts § 428 (Rev. ed. 1936). As stated in Lone Star Cement Corp. v. Swartwout, supra (93 F.2d at pages 769–770):

> "No particular phraseology is required to effect an assignment, and it may be either in oral or written form; *but the intent to vest in the assignee a present right in the thing assigned must be manifested by some oral or written word or by some conduct signifying a relinquishment of control by the assignor and an appropriation to the as-*

*signee. * * *"* (Emphasis supplied.)

■■ With these fundamental principles in mind, the Court turns to the interpretation and effect of the writing involved in this case. As with any written instrument, the intention of the parties controls in determining whether it constitutes an assignment. See Wolters Village Management Co. v. Merchants and Planters National Bank of Sherman, 5 Cir., 1955, 223 F.2d 793, 798. And the intention of the parties is to be gathered from the writing construed in light of the subject matter, the motive and purpose of making the agreement, and the object to be consummated, the words used being given their common and ordinary meaning. See Bar Harbor & Union River Power Co. v. Foundation Co., 1930, 129 Me. 81, 85, 149 A. 801; Salmon Lake Seed Co. v. Frontier Trust Co., 1931, 130 Me. 69, 71, 153 A. 671. So viewed, the instrument of November 1, 1956 is susceptible of only one reasonable interpretation. It provides that any money "advanced" by Mr. Proctor and defendant for the manufacture of the Radome "will be" repaid immediately "upon receipt of" Hazeltine's remittance, irrespective of any other demands from other creditors. There is nothing in its terms indicative of that manifestation of present surrender of control essential to an assignment. Language of present transfer is wholly lacking. Defendant asserts that the instrument was drawn by laymen, inartistically perhaps, solely with the intention of securing future advances this defendant and Mr. Proctor might make to attempt to save a sinking corporation. Mayhap such was the case. Unfortunately for this defendant, the Court has before it no evidence of what the parties intended save the instrument itself. Whether it was authored by laymen or lawyers, it speaks clearly in future terms and can rise to no higher legal status than a promise to pay out of a particular fund to come into existence in the future. Insofar as this record discloses, the debtor was not notified that the contract had been assigned, nor was

any attempt made to limit the Corporation's control over the contract or its proceeds. Cf. Lone Star Cement Corp. v. Swartwout, supra, 93 F.2d 769. There being no evidence of an intent to transfer any immediate right to defendant, but rather evidence only of a promise to pay at a future date, the authorities which have been cited compel the conclusion that no assignment was intended or effected by the instrument of November 1, 1956.

The two Maine cases of Buck v. Swazey, 1852, 35 Me. 41 and Harlow v. Bartlett, 1902, 96 Me. 294, 52 A. 638, upon which defendant relies, are not in conflict with the foregoing conclusion. Swazey, in its aspects here material, involved an agreement by the defendant to "account for and pay" to plaintiff one-sixth of the proceeds of certain notes secured by a mortgage of real estate, in which the Court found that defendant owned an equitable interest. The mortgage having been foreclosed, the Court construed the agreement as a contract to convey the defendant's interest in the mortgaged real estate, and hence specifically enforceable in equity under familiar principles. In Bartlett, the Court was concerned with a purported assignment of wages in the form of an instrument addressed to the assignor's employer and recorded in accordance with the applicable Maine statute. The Court construed the instrument as a direction or order by the employee to the employer to pay to the assignee the indicated amounts of wages then due and to become due to the employee.

Nor does Barnes v. Alexander, 1914, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530, support defendant's position here. That case related specifically to the question of whether an equitable lien may arise from an attorney's contract with his client for a contingent fee. The Supreme Court held, without reference to the subject of assignments, that an equitable lien might be created on the fund eventually obtained through the attorney's services. Barnes v. Alexander has not been regarded as authority for the recognition of an effective assignment in circumstances such as those in the instant case. Lone Star Cement Corp. v. Swartwout, supra, 93 F.2d 770. Its limited scope is indicated by the following comment in B. Kuppenheimer & Co. v. Mornin, supra (78 F.2d at pages 264-265):

"Fairly good reasons for putting aside the strict requirements of the doctrine of equitable assignments can be found in the case of an asserted lien by a lawyer for his fee, on the money recovered as the result of litigation, for the efforts of the lawyer bring the fund into existence. In such case it may be said, arguendo, that the lawyer asserting the lien is, in a manner of speaking, a joint adventurer, and such cases scarcely belong in the category of equitable assignments. * * *

"Many cases are to be found sustaining the rule that a promise to pay out of a particular fund, when it shall come into existence, does not create an equitable assignment of that fund. As counsel for defendants on argument aptly said, in effect, that business and commerce will be greatly harmed, hamstrung, and impeded if every agreement of an Iowa farmer to pay a debt out of a crop of corn, when he shall have sold the corn, is to be held to be an equitable assignment of the proceeds of such corn."

Defendant's alternative suggestion that the November instrument constituted a declaration of trust must also fail. The Court's construction of the instrument as a promise to pay in the future requires rejection of this argument. See 1 Scott on Trusts § 12 (2d ed. 1956). As stated in Northwestern Mutual Life Insurance Co. v. Collamore, 1905, 100 Me. 578, at page 584, 62 A. 652, at page 655:

"A declaration of trust to be effectual, must be explicit, unconditional, and complete * * * the

500

declaration must be of a present trust, vesting the equitable title in the beneficiary thereby and irrevocably."

On the analysis previously stated, the November instrument evidences no intent to vest equitable title to any of the proceeds of the Hazeltine contract irrevocably in defendant.

Since the November 1 instrument was neither a partial assignment nor a declaration of trust, it follows that the payment by Fiberlast to defendant on February 11, 1957 was a preference within the meaning of Section 60, sub. a of the Bankruptcy Act and may be avoided by the Trustee under Section 60, sub. b.

Judgment is accordingly ordered for plaintiff in the amount of $2,056.87, with costs.