## MAINE LEAGUE FEDERAL CREDIT UNION

### v.

## ATLANTIC MOTORS.

Supreme Judicial Court of Maine.

Feb. 20, 1969.

Childs & McKinley, by William E. Mc-Kinley, Portland, for plaintiff.

Monaghan & Perkins, by Stephen L. Perkins, Portland, for defendant.

Before WILLIAMSON, C. J., WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

On report on an agreed statement. This is an action for the conversion of a sta-tion wagon accepted as a "trade in" by the defendant in June 1966.

The plaintiff on May 10, 1966 loaned one Gilson $6576. We quote from the agreed statement:

"A promissory note, security agreement and financing statement, Form U.C.C. 1,[1] were prepared and executed by the parties. Form U.C.C. 1 bore the typed signature of the secured party as follows:

'Maine League Federal Credit Union
By

"No individual signed the financing statement on behalf of the credit union.

"Among the items described in both the financing statement and security agreement was a 1965 Falcon 4-door 6-cylinder station wagon."

The assistant treasurer of the plaintiff mailed Form U.C.C. 1 with check for filing fee to the proper town clerk, who received and filed the form on May 13, 1966.

We again quote from the agreed statement:

Milton B. Pratt, Assistant Treasurer of the credit union, was responsible for the everyday operation of the credit union. It was his practice to sign all Forms U.C.C. 1, before filing the same. He failed to place his signature on the financing statement by inadvertence. When he mailed the financing statement to the Town Clerk, he thought he had placed his signature thereon.

"Atlantic Motors had no actual notice of the security interest of the credit union in the vehicle in question."

References to statutes are to sections of the Uniform Commercial Code (11 M.R. S.A.) unless otherwise indicated.

In the words of the parties, "The sole question involved is whether or not the

1. 2 Maine Pract. (Spanogle) U.C.C. Forms p. 122 et seq.

financing statement, Form U.C.C. 1, filed in this case is effective as against third parties under the laws of the State of Maine."

More precisely, in our view, the issues are: (1) Whether the financing statement was signed by the plaintiff as the secured party in compliance with Section 1–201 (39) [2] and Section 9–402(1) [3], and (2) if not so signed, whether the filing nevertheless was sufficient under Section 9–402(5) to protect the secured party.

For U.C.C. 1 is a form carrying in print at the top, "This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code," and at the bottom in print after provision for names, data, and other pertinent information:

"DATE
_____ _____

By _____ By _____
Signature(s) of Debtor(s) Signature(s) of Secured
File Copy—Secured Party(ies) Party(ies)

Form U.C.C. 1 Approved by Secretary of State,
STATE OF MAINE"

---

The words "Maine. League Federal Credit Union" (typed) taken alone were not the signature of the plaintiff unless they were a "symbol executed or adopted by [the plaintiff] with present intention to authenticate [the financing statement]." Section 1–201(39).

From the agreed statement it is apparent that the words above noted were not intended by the assistant treasurer to be the signature of the plaintiff Credit Union. There was no present intention by the assistant treasurer thereby to authenticate the "writing."

On the contrary, it was the practice of the assistant treasurer to sign all U.C.C. 1 Forms. It was through inadvertence and not by intent that he failed to place his signature on the form, thus signing for the Credit Union, and that he mailed the form to the town clerk for filing, thinking that he had so signed.

The record denies the required intention. The assistant treasurer simply failed to do what he had intended to do, that is, to sign his name on the financing statement. His thinking that he had signed did not make it so, or establish an intent to execute or adopt the typed words plus the printed "by" without more as the signature of the Credit Union.

■ The case does not come, in our view, within the bounds of an intended use of a symbol as a signature. Comment on Section 1–201(39) reads:

"39. 'Signed'. New. The inclusion of authentication in the definition of 'signed' and contains a statement indicating the types, or describing the items, of collateral. * * * A copy of the security agreement is sufficient as a financing statement, if it contains the above information and is signed by both parties."

4. "§ 9–402(5) A financing statement substantially complying with the requirements of this section is effective, even though it contains minor errors which are not seriously misleading."

---

2. "§ 1–201(39) *Signed.* 'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing."

3. "§ 9–402(1) *Formal requisites of financing statements; amendments.* A financing statement is sufficient, if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor

is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing."

Cf. Statute of Frauds "signed by the party to be charged therewith", 33 M.R.S.A. § 51; Restatement (2d) Contracts T.D. #4 1968 § 210, reading:

"SIGNATURE.

The signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer."

See also Mesibov, Glinert & Levy v. Cohen Bros. Mfg. Co., 245 N.Y. 305, 157 N.E. 148 (1927) (opinion by Cardozo, C. J.).

Here the plaintiff through its officer, the assistant treasurer, intended to file a financing statement bearing the officer's signature. He had no intention of filing a statement not authenticated by his signature.

The plaintiff urges that if the financing statement was not signed in compliance with the Code, nevertheless no harm will come to the third party defendant. The record, it is argued, gives precisely the same notice which the third party would have had of a statement properly signed. We are asked to sweep away the requirement of a statement "signed by the debtor and the secured party" and to bear in mind the substantial compliance of Section 9–402(5) and the admonition to construe the Code liberally in Section 1–102.

The plain provision of the Code requires that sufficiency of the financing statement rests in part on the signatures of the debtor and the secured party. Unless this provision be given effect, it serves no useful purpose. The drafters of the Code could readily have provided, for example, for the filing of an unsigned copy of the financing statement. They chose, however, to demand signatures to authenticate the "writing," and this provision has been adopted by our Legislature.

We will agree that a search of the town clerk's records would have disclosed the unsigned financing statement and the name and address of the secured party typed in a blank space headed "2. Secured Party(ies) and address(es)." The availability of such disclosure is not, however, in our view the applicable test. Only a financing statement signed in compliance with the Code is entitled to be filed, thereby perfecting the security interest against third parties.

The authorities cited by the plaintiff do not alter our conviction that the requirement of the authenticated signature of the secured party does not give way to meet what has been termed "the loose, relaxed requirements of the Code." In Re Horvath (D. Conn. Bankruptcy) 1 U.C.C. Rep. Serv. 624.[5] We are not disposed to scuttle the Code requirements on a plea that they are loose and relaxed. Cf. Tardiff v. M–A–C Plan of N.E., 144 Me. 208, 67 A.2d 337 (1949) under conditional sales statute.

In Benedict v. Lebowitz, 346 F.2d 120 (CA 2 1965) the Court held that insertion of chattel mortgagee's name in body of financing statement constituted a sufficient "signing" by him to satisfy Connecticut Uniform Commercial Code, where mortgagee's intent to authenticate statement was established by act of secretary in typing his name at his direction and his subsequent act of filing statement and chattel mortgage, and he neglected to sign because of his misunder-

5. Quoted from plaintiff's brief; opinion not available.

standing of instructions of the form. (Headnote) We note the contrast between the material evidence pointing to authentication by *Lebowitz* and the lack of any evidence to like effect in the case at bar.

In In re Excel Stores, Inc., 341 F.2d 961 (CA 2 1965) under Section 9–402(5), the Court held that use of name "Excel Department Stores" instead of true name "Excel Stores, Inc." in signing conditional sale contract was a "minor error" and "not seriously misleading," where the contract was properly signed by appropriate officer and creditor or other interested person would in fact be put on notice of lien. (Headnote)

In In re Platt, 257 F.Supp. 478 (USDC Pa.1966), the Court, with reference to the identification of the debtor one "Henry Platt" as "Platt Fur Co.," held that the names were sufficiently related to require a search of the records. As in *Excel,* we do not have here an issue relating to the fact of signature.

See also In re Carlstrom, 3 U.C.C. Rep. Serv. 764 (N.D.D.C. Me.1966). The Referee in Bankruptcy, in a carefully drawn and persuasive opinion, concluded that a financing statement with "Eastern Trust and Banking Company By: _____ Signature(s) of Secured Party(ies)" on Maine Form U.C.C. 1 was not sufficient for lack of a signature. See also 47 B.U.Law Rev. 292 (1967), instructive and critical review of Carlstrom; 72 Commercial Law Journal 153 (1967), brief critical comment on Carlstrom; 16 Maine Law Rev. 91, 101 (1964) The Proposed Uniform Commercial Code: Article 9 by Hugh W. Babb.

The Referee in *Carlstrom* succinctly summed up the case in words applicable here:

"In the instant case it is obvious that the [credit union] through oversight omitted signing this financing statement. In the interest of preserving the integrity and reliability of the public record it would seem preferable under these circumstances to call an oversight instead of a signature."

The entry will be

Remanded for entry of judgment for the defendant.