LEVIN H. CAMPBELL, Circuit Judge.
 

 Grumman Credit Corporation appeals the judgment of the bankruptcy court holding that its security interests in certain assets
 
 *40
 
 of the debtor in possession Circus Time, Inc., were unperfected.
 

 Under six separate agreements executed during the period from May 1978 through March 1979, Grumman leased to Circus Time six 1978 Chevrolet vans. Three of the vans were registered in Maine and three in New Hampshire. On November 21, 1979, Circus Time filed a petition under Chapter 11 of the Bankruptcy Act, 11 U.S.C. §§ 1101-74. In the course of the ensuing bankruptcy proceedings, all assets of Circus Time, including the six vans, were sold free and clear of liens, with Grumman’s interest in the vans to attach to the proceeds of the sale. After a hearing on April 24,1980, the bankruptcy court found, and Grumman does not dispute, that the leases are security interests within the meaning of the Uniform Commercial Code, Me.Rev.Stat. tit. 11, § 1-201(37); N.H.Rev.Stat.Ann. § 382-A:l-201(37). The court determined that Grumman’s security interests were not perfected and so could be defeated by the debtor in possession pursuant to 11 U.S.C. §§ 544, 1107.
 

 Perfection of a security interest in a motor vehicle is governed in Maine and New Hampshire by those states’ Uniform Motor Vehicle Certificate of Title and Anti-Theft Acts, Me.Rev.Stat. tit. 29, §§ 2350-2447; N.H.Rev.StaiAnn. § 269-A:U49.
 
 [1]
 
 The Acts define a security interest as “an interest in a vehicle reserved or created by agreement and which secures payment or performance of an obligation. The term includes the interest of a lessor under a lease intended as security.” Me.Rev.Stat. tit. 29, § 2351(8).
 
 See also
 
 N.H.Rev.Stat. Ann. § 269-A:l(VIII) (defining “Security agreement” in identical terms). A security interest is perfected under the Acts
 

 “by the delivery to the Secretary of State of the manufacturer’s statement of origin or existing certificate of title, if any, an application for a certificate of title containing the name and address of the lien-holder and the date of his security agreement and the required fee. It is perfected as of the time of its creation, if delivery is completed within 20 days thereafter, otherwise as of the time of the delivery.”
 

 Me.Rev.Stat. tit. 29, § 2402(2).
 
 [2]
 
 The application for a certificate of title must contain “A. The name, residence and mail address of the owner;
 

 B. A description of the vehicle including, so far as the following data exists, its make, model, model year, identification number, type of body, the number of cylinders and whether new or used;
 

 C. The date of purchase by the applicant, the name and address of the person from whom the vehicle was acquired and the names and addresses of any lienhold-ers in the order of their priority and the date of their security agreements and, if a new vehicle, the application shall be accompanied by a manufacturer’s or importer’s certificate of origin and, if a used vehicle, the application shall be accompanied by a previous certificate of title;
 

 D. Any further information the Secretary of State reasonably requires to identify the vehicle and to enable him to determine whether the owner is entitled to a certificate of title and the existence or non-existence of security interests in the vehicle.”
 

 Me.Rev.Stat. tit. 29, § 2364(1)(A)-(D).
 
 See also
 
 N.H.Rev.Stat.Ann. § 269-A:7(I)(a)-(d). For certificate of title purposes, the “owner” of a vehicle is defined to be
 

 
 *41
 
 “a person, other than a lienholder, having the property in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security.”
 

 Me.Rev.Stat. tit. 29, § 2351(5); N.H.Rev. Stat.Ann. § 269-A:l(VI). A “lienholder” is “a person holding a security interest in a vehicle.” Me.Rev.Stat. tit. 29, § 2351(3); N.H.Rev.Stat.Ann. § 269-A:l(V). If the owner creates a security interest in the vehicle, he is responsible for executing the application for a certificate of title and delivering it to the lienholder, who then sends it to the Secretary of State. Me.Rev. Stat. tit. 29, §§ 2403(1), (2); N.H.Rev.Stat. Ann. §§ 269-A:22(I), (II).
 

 Upon receipt of an application for a certificate of title, the Secretary of State checks the vehicle identification number against the numbers on already issued certificates of title and against a record of stolen or converted vehicles. Me.Rev.Stat. tit. 29, § 2365; N.H.Rev.Stat.Ann. § 269-A:8 (“Director” rather than Secretary of State). When satisfied as to the “genuineness and regularity” of the application and that the applicant is otherwise entitled to a certificate of title, the Secretary issues the certificate. Me.Rev.Stat. tit. 29, § 2366(1); N.H.Rev.Stat.Ann. § 269-A:9(I). The certificate must contain
 

 “A. The date issued;
 

 B. The name and address of the owner;
 

 C. The names and addresses of any lien-holders, in the order of priority as shown on the application or, if the application is based on a certificate of title, as shown on the certificate;
 

 D. The title number assigned to the vehicle;
 

 E. A description of the vehicle including, so far as the following data exists, its make, model, model year designation, identification number, type of body, number of cylinders, whether new or used, and, if a new vehicle, the date of the first sale of the vehicle for use; and
 

 F. Any other data the Secretary of State prescribes.”
 

 Me.Rev.Stat. tit. 29, § 2367(1)(A)-(F); N.H. Rev.Stat.Ann. § 269-A:10(I)(a)-(f). A record of certificates issued is maintained by the Secretary and is indexed
 

 “A. Under a distinctive title number assigned to the vehicle;
 

 B. Under the identification number of the vehicle;
 

 C. Alphabetically, under the name of the owner; and, in the discretion of the Secretary of State, by any other method he determines.”
 

 Me.Rev.Stat. tit. 29, § 2366(2)(A)-(C); N.H. Rev.Stat.Ann. § 269-A:9(II)(a)-{c). The method provided by the Certificate of Title Acts for “perfecting and giving notice of security interests subject to [the Acts] is exclusive.” Me.Rev.Stat. tit. 29, § 2407; N.H.Rev.StatAnn. § 269-A:26.
 

 The bankruptcy court held that Grumman’s security interests in the six Chevrolet vans were unperfected because the applications for certificates of title submitted in Maine and New Hampshire, and the certificates issued, failed in two respects to satisfy the requirements of the Uniform Acts.
 
 [3]
 
 First, the certificates of title for the vehicles showed Grumman as owner and listed no lienholder. As those terms are defined in the Certificate of Title Acts, however, it is clear that Circus Time was the “owner” of the vans and Grumman a “lienholder.”
 
 See supra.
 
 Second, the certificates did not
 
 *42
 
 state the date of Grumman’s lien.
 
 [4]
 
 The bankruptcy court assumed that these errors would not have prevented a diligent person from discovering “the true relationship between Grumman and the Debtor” with regard to the vehicles; nevertheless, failure to comply with the plain terms of the Certificate of Title Acts was fatal, the court concluded, to Grumman’s security interests. Further, in the court’s view, to have read the statutes so as to find compliance would have run contrary to the legislative mandate that the Acts “be so interpreted and construed as to effectuate [their] general purpose to make uniform to the similar laws of other states.” Me.Rev.Stat. tit. 29, § 2350.
 
 See also
 
 N.H.Rev.Stat.Ann. § 269-A:48.
 

 Absolute compliance with the requirements of the Certificate of Title Acts is not necessary to perfect a security interest in a vehicle. Courts have properly interpreted such acts in light of the perfection provisions of the Uniform Commercial Code, which recognize as effective to perfect a security interest any filing that “substantially complies] with the requirements of [the Code] ... even though it contains minor errors which are not seriously misleading.” U.C.C. § 9-402(8); Me.Rev.Stat. tit. 11, § 9 — 402(8); N.H.Rev.Stat.Ann. § 382-A:9-402(8).
 
 See In re Williams,
 
 608 F.2d 1015,1018 (5th Cir. 1979);
 
 In re Little-john,
 
 519 F.2d 356, 358 (10th Cir. 1975);
 
 In re Bosson,
 
 432 F.Supp. 1013, 1017-18 (D.Conn.1977);
 
 In re Grandmont,
 
 310 F.Supp. 968, 970-72 (D.Conn.1970);
 
 In re Hollis,
 
 301 F.Supp. 1, 3-4 (D.Conn.1969);
 
 In re Hill,
 
 BK-76-515 (D.Me. Bankruptcy Aug. 11,1978). Cf.
 
 In re German,
 
 285 F.2d 740, 742 (7th Cir. 1961) (Uniform Title Act interpreted consistently with other Illinois recording acts to-require only substantial .compliance). As these decisions recognize, the perfection provisions of the Uniform Certificate of Title Act, like the provisions of the U.C.C., create a system of “notice filing” in which the document to be filed “indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.” Me.Rev.Stat. tit. 11, § 9-402(5), Comment 2; N.H.Rev.Stat.Ann. § 382-A:9-402(5), Comment 2. Discussing the purpose of notice filing, we have stated
 

 “The case law makes it abundantly clear that a financing statement is intended merely ‘to put a searcher on notice that an underlying security agreement may be outstanding. A properly filed financing statement would thus serve its intended purpose if a subsequent party would have been put on notice of an outstanding security agreement.’ ”
 

 In re Cushman Bakery,
 
 526 F.2d 23, 29 (1st Cir. 1975),
 
 cert. denied sub. nom. Agger v. Seaboard Allied Milling Corp.,
 
 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976);
 
 quoting Bramble Transportation, Inc. v. Sam Senter Sales, Inc.,
 
 294 A.2d 97, 103 (Del.1971).
 

 In the present case, the bankruptcy court correctly observed that the certificates of title obtained by Grumman satisfied this purpose: “It' is probably true that a diligent interested party could learn the true relationship between Grumman and the Debtor in view of the statutory mandate that [the certificates of title be indexed under the owner’s name, the title number and the vehicle identification number, Me.Rev.Stat. tit. 29, § 2366(2)(A)-(C); N.H.Rev.Stat.Ann. § 269-A:9(II)(a)-(c)].” A person who wished to find out whether any of Circus Time’s vans was subject to a security interest would have to examine the certificate of title for the van, the exclusive official record of security interests in the vehicle. Me.Rev.Stat. tit. 29, § 2407; N.H. Rev.Stat.Ann. § 269-A:26. He would most likely begin his search for the certificate under the name of the apparent owner of
 
 *43
 
 the van, Circus Time. Finding no certificate indexed under that name, he could use either the vehicle identification number or the title number to locate the certificate of title, which would show Grumnian as the owner of the van and thereby provide ample notice of Grumman’s claim to an interest in the vehicle. The certificate would not disclose the true nature of Grumman’s interest, but would be enough to protect a reasonably diligent party dealing with Circus Time in regard to the vans.
 

 “[A] financing statement is not intended to enable other creditors to learn the ‘true nature' of the secured transaction. The provisions of the ... statutes do not support [the] premise that the system of notice filing is designed to do more than apprise creditors that the secured party may have a security interest in the collateral described in the financing statement.”
 

 Cushman Bakery, supra,
 
 526 F.2d at 28. Having discovered Grumman’s interest in the van, a person would not be misled by Grumman’s failure to disclose the date of its security agreement as required by the Uniform Acts. Me.Rev.Stat. tit. 29, § 2364(1)(C); N.H.Rev.Stat.Ann. § 269-A:7(I)(c). The certificate for each van listed its date of sale and so would have given warning to anyone who later dealt with Circus Time of the possible existence of a prior interest in the van.
 
 See German, supra,
 
 285 F.2d 740;
 
 Grandmont, supra,
 
 310 F.Supp. at 971;
 
 Hollis, supra,
 
 301 F.Supp. at 3-4.
 

 Under these circumstances, we believe that a reasonably diligent person would have been put on notice of Grumman’s interest in the vans. Circus Time’s arguments to the contrary do not answer this point, but presuppose an interested party of ’ no diligence whatsoever. A notice filing statute, however, is not designed to save those who simply ignore the safeguards it provides. We therefore reverse the determination of the bankruptcy court. The certificates obtained by Grumman contain only “minor errors which are not seriously misleading” and so substantially comply with the perfection requirements presently at issue.
 

 The decision in
 
 Maine League Federal Credit Union v. Atlantic Motors,
 
 250 A.2d 497 (Me.1969), a case relied upon by the bankruptcy court, does not dictate otherwise. In
 
 Maine League,
 
 the Supreme Judicial Court of Maine held a financing statement ineffective to perfect a security interest in a station wagon because it had not been signed by the secured party as then required under Me.Rev.Stat. tit. 11, § 9— 402(1).
 
 [5]
 
 The court conceded “that a search of the town clerk’s records would have disclosed the unsigned financing statement and the name and address of the secured party...” but declared this not to be the applicable test of compliance; rather, it demanded strict adherence to the signature requirement. “[T]he requirement of the
 
 authenticated
 
 signature of the secured party does not give way to meet what has been termed ‘the loose, relaxed requirements of the Code.’ ” 250 A.2d at 500 (emphasis added),
 
 quoting In re Horvath,
 
 1 U.C.C.Rep. 624 (D.Conn. Bankruptcy 1963). As the quotation makes clear,
 
 Maine League
 
 does not reject using the adequacy of notice for a standard of compliance with filing requirements, but simply indicates that in some cases strict compliance may be necessary to effectuate other statutory purposes, such as ensuring the authenticity of a signature.
 
 [6]
 
 Accordingly, the court in
 
 Maine
 
 
 *44
 

 League
 
 distinguished cases holding flawed, but undisputably authentic, signatures of a secured party to satisfy the Code perfection requirements. 250 A.2d at 500-01.
 

 In this case we find no statutory purpose in addition to the giving of notice that would require compliance with the perfection requirements of the Uniform Certificate of Title Acts. Such statutes are intended to facilitate the identification of motor vehicles, the ascertainment of their owners and the prevention of theft or fraud in their transfer.
 
 See Calhoun v. Farm Bureau Mutual Insurance Co., 255
 
 Iowa 1375, 125 N.W.2d 121, 122-23 (1963),
 
 quoting
 
 Hudson, 1953
 
 Iowa Motor Vehicle Certificate of Title Law,
 
 3 Drake L.Rev. 3, 3-4 (1953); Comment, 10 Creighton L.Rev. 777, 777-78 (1977). Attainment of these goals does not require literal, rather than substantial, compliance with the perfection requirements of the Acts. Circus Time argues that Grumman’s failure to list it as the owner of the vehicles, or in any way mention its interests in the vans, on the certificates of title would enable Grumman to dispose of the vans fraudulently to third parties who relied on the certificates as evidence of ownership. This argument, however, presupposes a third party who in dealing with Grumman would be unconcerned by the fact that these vehicles “owned” by Grumman were on Circus Time’s premises, under full control, and in possession of, Circus Time.
 

 Addressing the very question at bar, several leading commentators in this area of the law indicated their support for the conclusion we reach:
 

 “The lessor of a motor vehicle usually obtains and holds a certificate of title for the leased motor vehicle in the lessor’s name. Since the ‘lessee’ of a motor vehicle under a lease ‘intended as security’ will normally be considered the ‘owner,’ it might be argued that it is the ‘lessee’ in such a case which is required to apply for and obtain a certificate of title. Taking the literal application of a ‘typical’ certificate of title one step further, an imaginative trustee in bankruptcy for such a ‘lessee’ might seek to cut off the ‘lessor’s’ rights in the motor vehicle by arguing that the ‘lessor’ has not perfected its security interest by an indication on the certificate of title. Since the certificate, in this hypothetical, is in the
 
 ‘lessor's’
 
 name, as owner, it would not indicate that the ‘lessor’ claimed a security interest in its own property. Returning to the ‘real world,’ it is not likely that a court would take such a formalistic and literal approach. After all, the usual purposes of certificate of title acts (e.
 
 g.,
 
 the prevention of theft, fraud, etc.) and the purposes of perfection (public notice of a claimed security interest) are satisfied by a certificate of title held by the lessor in its name — presumably, the ‘lessee’ would not be in a position to mortgage or sell the motor vehicle without the certificate of title in its name.”
 

 1C P. Coogan, W. Hogan & D. Vagts,
 
 Secured Transactions under the Uniform Commercial Code
 
 § 29A.04[6], at 2931 (1980).
 

 The bankruptcy court was correct to point out that in construing certificate of title acts such as those now before us, courts must be careful to promote uniformity among the states. However, based on our reading of the cases in other jurisdictions and such commentary on point as there is,
 
 see supra,
 
 we believe our present holding — that Grumman’s certificates of title satisfy the perfection requirements at issue — accommodates the goal of uniform statutory construction.
 

 In reversing the bankruptcy court’s decision we do not address the “several other issues regarding the validity and perfection of Grumman’s security interest” that were mentioned, but not discussed by the bankruptcy court. These issues remain to be decided; indeed, some have been urged upon us for decision with this appeal:
 
 *45
 
 whether a certificate of title applied for and issued after the filing of a bankruptcy petition is adequate to perfect a security interest as against the debtor in possession; whether a security interest in a vehicle can be perfected in the absence of a certificate of title; and whether Circus Time is es-topped in this case from challenging the validity of Grumman’s security interest. Although the first two of these questions would on the limited facts before us seem to require a negative answer, a decision upon the third, and potentially dispositive, question requires an examination of facts and law not addressed by the bankruptcy court. Further, it is not apparent what other issues of perfection and validity were raised by the debtor in possession, but considered to be “moot” by the bankruptcy court and so not discussed in its decision. For these reasons, we decline to proceed further with this case, but instead remand it for additional proceedings consistent with this opinion.
 

 The judgment is reversed and the case remanded for further proceedings.
 

 [1]
 

 . In all pertinent respects the two Acts are virtually identical and we will therefore follow the parties and bankruptcy court in quoting only the Maine statute in text. Any significant divergence in the language of the Acts will be noted.
 

 [2]
 

 . The New Hampshire Act provides
 

 “II. A security interest is perfected by the delivery to the director of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if delivery is completed within 10 days thereafter, otherwise as of the time of the delivery.”
 

 N.H.Rev.Stat.Ann. § 269-A:21(II).
 

 [3]
 

 . Only five of the vehicles were covered by certificates of title and of those, only four of the certificates were issued or applied for prior to November 21, 1979, the date Circus Time filed its bankruptcy petition. The bankruptcy court felt that its disposition of the case subsumed and rendered “moot” any further questions as to whether a security interest in a vehicle could be perfected in the absence of a certificate of title or by a certificate applied for and received after the commencement of bankruptcy proceedings. It therefore treated all six vans as if they were covered by timely certificates of title. For the moment, we also will proceed in this fashion, but our analysis of the case ultimately requires that the vehicles be more carefully differentiated.
 
 See infra.
 

 [4]
 

 . The bankruptcy court also noted that the names, residences and mail addresses of the owner and lienholder were missing. Though correct, this observation unfairly compounds Grumman’s error. The omission of Circus Time’s residence and address is simply part of Grumman’s larger and total failure, which we consider
 
 infra,
 
 to divulge Circus Time’s interest in the vans on the certificates.
 

 [5]
 

 . The requirement that the secured party sign the financing statement was deleted in 1977. 1977 Me.Acts ch. 526.
 

 [6]
 

 . In such cases, section 9-402(8) of the U.C.C., see
 
 supra,
 
 would seem to impose two requirements, rather than one. Where a statutory objective in addition to giving notice is implicated, it is not enough for a finding of substantial compliance that a filing contained only “minor errors which are not seriously misleading.” The filing must also be free of errors which would affect its “substantial compliance” with the other statutory purpose. This, we believe, is the most reasonable resolution of the question raised by Circus Time of whether section 9 — 402(8) contains two independent elements, “substantial compliance”
 
 and
 
 the absence of
 
 *44
 
 “seriously misleading” errors.
 
 Cf.
 
 J. White & R. Sommers,
 
 Handbook of the Law Under the Uniform Commercial Code,
 
 § 23-16, at 954 (2d ed. 1980) (drafters of U.C.C. probably intended two conditions).