## In re SHOP–N–GO OF MAINE, INC.

### Civ. No. 83–0273 P.

United States District Court,
D. Maine.

April 2, 1984.

F. Mark Terison, Asst. U.S. Atty., Portland, Maine, Harlan Choate, Small Business Administration, Augusta, Maine, for plaintiffs.

Kenneth Clegg, Bourque & Clegg, Sanford, Maine, for intervenor.

Harvey J. Putterbaugh, Portland, Maine, for defendants.

George Marcus, Pierce, Atwood, Scribner, Allen Smith & Lancaster, Portland, Maine, for Harvey Putterbaugh.

Peter W. Greenleaf, Asst. U.S. Trustee, Portland, Maine, for U.S. Trustee.

## OPINION AND ORDER

GENE CARTER, District Judge.

In this case the trustee in bankruptcy of Shop-N-Go, Inc. appeals from a Bankruptcy Court order in which the Court held that "the Small Business Administration [SBA] has a security interest by assignment from the Northeast Bank of Sanford in all of the debtor's inventory at any place within Maine ...." The debtor, Shop-N-Go, had filed a petition for reorganization under Chapter 11 in June 1981. In November 1981 the case was converted to Chapter 7 and appellant was appointed trustee. The trustee sold debtor's equipment, furnishings and inventory and now holds the proceeds of those sales.

The SBA filed a proof of a secured claim in the Chapter 11 proceedings claiming that the debtor owed the SBA $80,373.66 plus accrued interest of $446.52 with daily interest accrual thereafter of $22.33. The SBA had acquired its claim by assignment from Northeast Bank of a note for $110,000 by the debtor to the bank. At the time the

note was executed, debtor also executed two security agreements in favor of Northeast Bank. Both were embodied in pre-printed forms in which blanks are left to be filled in by the parties.

In the first agreement debtor granted a security interest in

All equipment, including all machinery, furniture, fixtures,* and goods of any kind used or bought for use primarily in Debtor's business;

All inventory, including all new and used goods held for sale or lease or furnished or to be furnished under contracts of service; raw materials, work in process, timber to be cut and removed under conveyance or contract of sale,* and materials used or consumed in Debtor's business at any place of business within this state.

Each of those grants was effectuated by checking a box on the preprinted form. Under the grant on the form and referring to the asterisked words was the following printed explanation in which the parties had filled in the words of location: "*If collateral includes timber to be cut, crops, minerals, or fixtures, the land concerned is located at Sabbatus [sic] Street Lewiston ME and described in a deed recorded in the Androscoggin County Registry of Deeds at Book 1377, Page 25." The form also set forth certain warranties, among which was ¶ 4 stating that "[t]he Collateral will be kept at Sabbatus [sic] Street, Lewiston, ME ...." Again the parties had typed in the words of location in a blank space provided on the form.

The second security agreement is virtually identical except for the asterisked reference clause and paragraph 4 of the warranties. These provide that the land concerned is located at Madison Street, Skowhegan, ME and that the collateral will be kept there. The financing statement filed by debtor for the first security agreement provides that it covers

All equipment, including all machinery, furniture, fixtures, and goods of any kind used or bought for use primarily in Debtor's business; all inventory, including all new and used goods held for sale or lease or furnished or to be furnished under contracts of service; raw materials, work in process, timber to be cut and removed under conveyance or contract of sale, and materials used or consumed in Debtor's business; at any place of business within this state, now owned or hereafter acquired. Located at Sabbatus [sic] St., Lewiston, ME.

The financing statement filed for the second security agreement is identical except that its last phrase states: "Located at Madison St., Skowhegan, Me." The financing statements were filed both with the Secretary of State and with the Registry of Deeds in the county of the place referred to in the statement. At the time of executing the security agreement debtor had several places of business other than those mentioned specifically.

Based on the above security agreements and financing statements the SBA, before the Bankruptcy Court, claimed a security interest in all the debtor's inventory and equipment at any place of business in Maine. The trustee argued, as it argues here, that the security interest held by the SBA is limited to the inventory and equipment located at Sabattus Street and Madison Street only. In resolving the dispute the Bankruptcy Court stated:

The court believes that the parties probably intended to limit the security interest to the Lewiston and Skowhegan inventories only. The court is bound, however, by the First Circuit's decision in *In re Circus Time, Inc.*, 641 F.2d 39 (1st Cir. 1981), to find that the SBA has a security interest in all the debtor's inventory at any place of business within Maine.

This Court does not find *Circus Time* apposite and therefore must reverse the decision of the Bankruptcy Court.

*Standard of Review*

Before addressing the substantive issue presented by this appeal, it is necessary to determine the appropriate standard of review to be applied by this Court in reviewing Bankruptcy Court decisions. The Su-

preme Court declared in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that "Art. III bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws." *Id.* at 76, 102 S.Ct. at 2874. Finding the grant of jurisdiction to the bankruptcy courts for related matters inseparable from the grant over core matters, those dealing with the restructuring of debtor-creditor relations, the Court struck down the entire grant of jurisdiction to the bankruptcy courts contained in the Bankruptcy Reform Act of 1978. *Id.* at 87, n. 40, 102 S.Ct. at 2880 n. 40. In the wake of the jurisdictional vacuum created by *Marathon,* this Court, and all other Federal District Courts, promulgated a local rule providing for automatic reference of bankruptcy cases from the district court to the bankruptcy court. Addressing the *Marathon* concern that bankruptcy cases be heard by Art. III judges, Rule 41(e)(2)(B) provides that review by the District Court of bankruptcy court decisions shall be *de novo.* Although this Court in *In re South Portland Shipyard and Marine Railways Corp.,* No. 83–0240P (D.Me. Sept. 14, 1983), found Rule 41 improperly promulgated and thus invalid, that rule remains in effect pursuant to a stay entered pending the outcome of the appeal of *South Portland.*

■ The standard set forth in Rule 41 is in direct conflict with that set forth in Bankruptcy Rule 8013, which was promulgated by the Supreme Court and which went into effect on August 1, 1983. That rule, which also supposedly governs bankruptcy procedure, provides that findings of the Bankruptcy Court shall not be overturned unless they are clearly erroneous. Although the district courts are free to adopt local rules of practice and procedure, these rules may not be inconsistent with the Bankruptcy Rules. Bankruptcy Rule 9029. Therefore, the local rule's *de novo*

review standard must give way to the conflicting standard of review established in the Bankruptcy Rules. *In re Morrissey,* 717 F.2d 100, 104 (3d Cir.1983).

The Court's decision to apply the clearly erroneous standard is further prompted by the fact that Rule 41 sweeps too broadly in its effort to provide constitutional adjudication of bankruptcy cases. The Supreme Court in *Marathon* dealt with a related matter and found constitutional infirmity only in allowing related matters to be determined by a non-Article III tribunal. The Court specifically distinguished core matters, like the instant one to determine the validity of a creditor's proof of claim, because they relate to the restructuring of debtor-creditor relations, *Marathon,* at 71, 102 S.Ct. at 2871. Therefore, Rule 41's provision of *de novo* review in core matters is not constitutionally mandated, and the clearly erroneous standard set forth in Rule 8013 is more appropriate for core matters.

In applying the clearly erroneous test, a reviewing court should reverse a finding of fact only when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ In determining the extent of a security agreement, a two-fold inquiry is in order: (1) Can the written description reasonably be construed to include the disputed property; and (2) Did the parties intend that the description include the disputed property? *See* J. White & R. Summers, Uniform Commercial Code 912 (2d ed. 1980). In this case, the written description can reasonably be construed to include either the debtor's inventory located at the Sabattus Street and Madison Street stores or all debtor's equipment and inventory within the state.[1] Therefore, the question of intent becomes determinative.

---

1. The bankruptcy judge noted with approval the Ninth Circuit's decision in *In re California Pump & Manufacturing Co.,* 588 F.2d 717 (9th Cir.

1978), which held that a description of collateral limited to property situated in one location does not reasonably identify property actually locat-

The bankruptcy judge made a finding of fact that "the parties probably intended to limit the security interest to the Lewiston and Skowhegan inventories only."[2] This finding of fact is supported by the record and does not leave this Court "with the definite and firm conviction that a mistake has been committed." *United States Gypsum,* 333 U.S. at 395, 68 S.Ct. at 542.

As appellant points out, the existence of two separate security agreements, referring specifically either to the Sabattus Street or Madison Street stores indicates that the parties intended to create two separate, limited security agreements. If all of the inventory were to be covered, the more logical mode of proceeding would have been to draft either one security agreement covering all the stores in the state or a separate security agreement for each of the many stores in the state.

The intervenors argue that the intent of the debtor to grant a security interest in "all inventory" and "all equipment" is unambiguous because the locator clause in paragraph 4 of the agreement cannot be used to modify the granting clause. Intervenors urge as support for their argument the holding in *In re Little Brick Shirt-house,* 347 F.Supp. 827 (N.D.Ill.1972), in which a security interest was not invalidated for want of an adequate description of the collateral where the granting paragraph named all debtor's inventory but the locator clause was left blank. The court held that the locator clause was not necessary for a description of the collateral and that for the security interest to be valid the granting clause must contain the description. The Illinois court was addressing a different issue than that faced by the bankruptcy judge in this case. Rather than construing an unambiguous grant, here the court was faced with patent ambiguity and had to ascertain the intent of the parties. The preprinted granting paragraph itself described all the inventory and equipment of the debtor, and included the language "wherever located in the state." However, in three places in the pertinent documents the parties affirmatively added words to the effect that the collateral was located at either the Sabattus Street store or the Madison Street store. The note explaining the grant of a security interest in the fixtures stated that they were located either at Sabattus Street or Madison Street, Skowhegan. The warranty promised that the collateral would be kept at Sabattus Street or Madison Street, Skowhegan. The financ-

ed in other places. In that case the court was interpreting a security agreement which described the collateral as:

"All of the furniture, fixtures, leasehold improvements, inventory, and accounts receivable ... located at:
California Pump & Manufacturing Co., Inc.
436 Rozzi Place
So. San Francisco, CA 94080"

The financing statement described the collateral as:

"All furniture, fixtures, equipment, inventory and accounts receivable owned by Debtor and located at 436 Rozzi Place, South San Francisco, California 94080."

The court explained that it was "unable to convert a clear and unambiguous designation of personal property located in a specific place into a description of all of the debtor's personal property wherever situated." *Id.*

Although the disputed security agreements and financing statements in this case use the words "located at" and "kept at," they are not as clear and unambiguous as those in the *California Pump* case. In addition to the language of location which is separate from the preprinted granting form, the boxes checked refer to all inventory "at any place of business within this state." The financing statements repeat this phrase then add: "Located at Sabattus St. Lewiston" or "at Madison St. Skowhegan". The juxtaposition of two terms of location is the circumstance creating the ambiguity here and that circumstance was not present in *California Pump.*

2. Appellees assert that the use of the word "probably" indicates equivocation rather than a definite finding by the bankruptcy judge. The Court cannot agree. Although the finding would be more emphatic if the bankruptcy judge had stated "I find that the parties intended ...," his determination of intent must only be more probable than not. The word "Probably" expresses this required quantum of proof, justifying this Court's acceptance of the court's language as a specific finding as to intent. Such an interpretation is further compelled by the fact that this is the only place in the opinion where the bankruptcy court addressed the intent of the parties.

ing statements demonstrate the ambiguity most sharply for they refer to all the equipment and inventory "at any place of business within this state now owned or hereafter acquired. Located at [either Sabattus St. or Madison St.]"

 Since the debtor owned many more than the two stores mentioned, common sense dictates that "all" of debtor's equipment and inventory cannot be located only at the two stores enumerated in the pertinent documents. Thus, in order to give effect to each provision of the security agreement, including the location provisions, as he was bound to do under Maine law, *Salmon Lake Seed Co. v. Frontier Trust Co.*, 130 Me. 69, 71–72, 153 A. 671 (1931), the bankruptcy judge logically found that the parties intended to limit the reach of the security agreement to the inventory and equipment at only the Sabattus Street and Madison Street stores. It is clear then that the bankruptcy judge's finding concerning the parties' intent was not clearly erroneous.

The court below thought, however, that it was precluded by the First Circuit's ruling in *In re Circus Time, Inc.*, 641 F.2d 39 (1st Cir.1981), from giving effect to its finding. Applying the *Circus Time* test for sufficiency of a financing statement, the bankruptcy court found that the financing statements at issue in this case, although ambiguous, were sufficient to put a reasonably diligent person on notice that the SBA might claim a security interest in all the debtor's inventory at any of its places of business. Based on this finding, the court determined that the SBA had a security interest in all the debtor's inventory.

This Court cannot accept the reasoning of the court below as it pertains to the application of *Circus Time*. *Circus Time* deals exclusively with perfection of security interests. The court there was not presented with, nor did it address, any issue concerning the creation of or scope of security interests. Although, as the bankruptcy judge pointed out, the ambiguous financing statements were adequate to give

notice that all of the inventory and equipment of the debtor *might be* subject to a security interest, they perform merely that notice function. "Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." *Id.* at 42 (*quoting* 11 M.R.S.A. § 9–402(5), Comment 2). Further inquiry in this case would have necessitated inquiry into the intent of the parties, which the bankruptcy court found was that the security interest was limited to the equipment and inventory at the Sabattus Street and Madison Street stores.

In sum, then, the bankruptcy court mistakenly applied the First Circuit's ruling in *Circus Time* and disregarded its own finding that the parties intended to limit the security interest to the Sabattus Street and Madison Street stores. Since that finding is not clearly erroneous, this Court will give it effect.

It is, therefore, ORDERED that the decision of the bankruptcy court is REVERSED.