774 F.2d 1077
 41 UCC Rep.Serv. 1800
 In re LOAD-IT, INC., Debtor.
LOAD-IT, INC., Plaintiff-Appellant,
v.
VTCC, INC., d/b/a Volvo White Truck Credit Company, f/k/a
White Motor Credit Corp., Assignee of Volvo of
America, Defendant-Appellee.
 No. 85-8255
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 29, 1985.
 
 Edward Hine, Jr., Rome, Ga., for plaintiff-appellant.
 Thomas C. Richardson, Rome, Ga., for defendant-appellee.
 Appeal from the United States District Court For the Northern District of Georgia.
 Before RONEY, HENDERSON and HATCHETT, Circuit Judges.
 PER CURIAM:
 
 
 1
 Load-It, Inc. (Load-It) appeals the district court's decision that Volvo of America Corp. (VTCC) perfected its security interest in nine Volvo tractors, the subjects of a Master Lease. We affirm.
 
 
 2
 On May 10, 1982, Load-It, as assignee of Elkay, Inc., entered into a Master Lease Agreement with VTCC. Pursuant to that agreement, Load-It agreed to lease nine Volvo tractors from VTCC. The state of Georgia issued a certificate of title for each of the nine tractors. Each certificate showed VTCC as owner, with VTCC's address. The certificates reflect no liens or security interests against the vehicles.
 
 
 3
 On February 8, 1984, Load-It filed a Chapter 11 petition in the bankruptcy court. Subsequent to VTCC's motion for relief from the automatic stay provisions of the bankruptcy code, VTCC and Load-It agreed that "VTCC would be entitled to dispose of the tractors and to retain the proceeds, subject to [Load-It's] challenge to the lease." The bankruptcy court found that the Master Lease Agreement was intended as security. Consequently, the bankruptcy court, interpreting Georgia law as requiring substantial compliance with the perfection of security interests statutes, found that VTCC had substantially complied. In this appeal, Load-It asserts that VTCC's security interest in the Volvo tractors is voidable because VTCC's security interests were not perfected by the issuance of certificates of titles to the vehicles; the certificates of title identified VTCC as "owner" of the vehicles while reflecting no interest of Load-It in the vehicles.
 
 
 4
 Several courts have addressed the question of whether a lease agreement evidenced by a certificate of title in which the lessor is denominated the "owner" and where there is no express identification of the "owner's" security interest constitutes a perfected security interest under a state perfection of security interest statute. The lead case in this area is In Re Circus Time, 641 F.2d 39 (1st Cir.1981). The First Circuit, construing the intent of the Maine and New Hampshire Uniform Motor Vehicle Certificate of Title and Anti-theft Acts held that the certificate of titles in which the secured creditor was represented on the certificates as owner instead of security holder, was adequate perfection of a security interest.[1] The court found that substantial compliance with the motor vehicle perfection of security interests statutes satisfied the purposes of such statutes: "To facilitate the identification of motor vehicles, the ascertainment of the owners, and the prevention of theft or fraud in their transfer." In Re Circus Time, 641 F.2d at 44. Quoting leading commentators, the court stated:
 
 
 5
 'The lessor of a motor vehicle usually obtains and holds a certificate of title for the leased motor vehicle in the lessor's name. Since the "lessee" of a motor vehicle under a lease "intended as security" will normally be considered the "owner," it might be argued that it is the "lessee" in such a case which is required to apply for and obtain a certificate of title. Taking the literal application of a "typical" certificate of title one step further, an imaginative trustee in bankruptcy for such a "lessee" might seek to cut off the "lessor's" rights in the motor vehicle by arguing that the "lessor" has not perfected its security interest by an indication on the certificate of title. Since the certificate, in this hypothetical, is in the "lessor's" name, as owner, it would not indicate that the "lessor" claimed a security interest in its own property. Returning to the "real world," it is not likely that a court would take such a formalistic and literal approach. After all, the usual purposes of certificate of title acts (e.g., the prevention of theft, fraud, etc.) and the purposes of perfection (public notice of a claimed security interest) are satisfied by a certificate of title held by the lessor in its name--presumably, the "lessee" would not be in a position to mortgage or sell the motor vehicle without the certification of title in its name.'
 
 
 6
 1C P. Coogan, W. Hogan & D. Vagts, Secured Transactions under the Uniform Commercial Code Sec. 29A.04, at 2931 (1980).
 
 
 7
 In Re Circus Time, 641 F.2d at 44. See also Coble Sys. Inc. v. Coors of the Cumberland, Inc., (In re Coors of the Cumberland, Inc.), 19 B.R. 313 (Bankr.M.D.Tn., 1982); In re Trivett, 12 B.R. 373 (Bankr.E.D.Tn., 1981); Yeager Trucking v. Circle Leasing of Colo. Corp. (In re Yeager Trucking), 29 B.R. 131 (Bankr.D.Colo., 1983); Matter of Skyland, Inc., 28 B.R. 354 (Bankr.W.D.Mich.1983); Equilease Corp. v. McCall (In re McCall), 27 B.R. 106 (Bankr.W.D.N.Y., 1983); contra, In re Nat'l. Welding of Mich., Inc., 17 B.R. 624 (Bankr.W.D.Mich., 1982).
 
 
 8
 We agree with the district court that VTCC substantially complied, as was its minimal duty, with the purposes of the Georgia Title Act: notice to potential creditors of the existence of a lien upon the motor vehicle. In Re Williams, 608 F.2d 1015, 1018 (5th Cir.1979); Roberts v. International Harvester Credit Corp., 143 Ga.App. 206, 207, 237 S.E.2d 697 (1977). The certificates of title give clear notice that VTCC, listed as "owner," has some interest in the tractors, so as to encumber any claim of complete ownership which Load-It may assert. Accordingly, we hold that VTCC's perfected interest is not voidable pursuant to 11 U.S.C.A. Sec. 544(a)(1) and that VTCC is entitled to retain the proceeds from the sale of the tractors.
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 The requirements for perfection of security interests under the Maine, New Hampshire, and Georgia statutes are substantially similar. In Maine, a security interest is perfected
 by the delivery to the Secretary of State of the manufacturer's statement of origin or existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation, if delivery is completed within 20 days thereafter, otherwise as of the time of the delivery.
 Me.Rev.Stat. tit. 29, Sec. 2402(2). See also N.H.Rev.Stat.Ann. Sec. 269-A:21 (II).
 The Georgia perfection statute provides:
 (b) A security interest is perfected by delivery to the commissioner of the existing certificate of title, if any, and an application for a certificate of title containing the name and address of the holder of a security interest, the date of his security interest, and the required fee. It is perfected as of the time of its creation if the delivery is completed within 20 days thereafter; otherwise, as of the date of the delivery to the commissioner. When the security interest is perfected as provided for in this subsection, it shall constitute notice to everybody of the security interest of the holder. (Ga.L.1961, p. 68, Sec. 21; Ga.L.1962, p. 79, Sec. 11; Ga.L.1978, p. 1081, Sec. 9; Ga.L.1981, p. 883, Sec. 9.)
 Ga.Code Ann. Sec. 40-3-50(b).